1814.

MEYER<br>et al.<br>v.<br>BARKER.

---

## RUSSEL *against* SKIPWITH.

THIS was an action of covenant, in which the defendant since the last continuance pleaded as follows: " and for " further plea the defendant comes and says, that the plain- " tiff ought not further to have or maintain his aforesaid " action, because the said *William Russel* is an alien enemy, " born out of the allegiance of the *United States*, and within " the allegiance of a foreign sovereign, to wit, The King of " the United Kingdom of *Great Britain* and *Ireland*, and is " not a citizen of the said *United States* of *America*, nor " resident within the same; and that since the last continu-

*Philadelphia,*<br>*Monday,*<br>*January 17.*<br>A plea of alien<br>enemy, must set<br>forth that the<br>plaintiff is himself<br>an enemy, or ad-<br>hering to the<br>enemy, or what<br>is equivalent to<br>this; but it need<br>not aver that he<br>is residing in the<br>country of the<br>enemy.

" ance of the plea between them, to wit, the ——— day of
"———, a public war has been commenced, and is now carried
" on, between the king of *Great Britain* and *Ireland* and their
" dependencies, and the said *United States* of *America* and
" their territories. And this &c. Wherefore &c." To this
plea there was a general demurrer, and joinder.

*Rawle* for the plaintiff. The plea is bad, because the defendant has not set forth every fact necessary to bar the plaintiff. He does not aver that the plaintiff is residing in an enemy's country. It is a hard and odious plea, and must be construed strictly. *Casseres* v. *Bell* (*a*).

The rigour of the ancient practice of confiscation has been banished from modern war. Credits are no longer affected by war. A reasonable time is allowed for the recovery, removal, and disposal of effects; and the humane and rational principle is adopted in *England*, that barely owing allegiance to a belligerent, is no bar to the action, without a residence in the country of the enemy. *Bynk. Law of War*, 56, 57., 1 *Emerg.* 567., 4 *U. S. Laws* 160. *Act of* 6th *July* 1798., *Treaty with G. B.* 1794, *Art.* 10. In *Casseres* v. *Bell*, the plea did not describe the plaintiff as residing in the enemy's country, and it was held bad. In *Lebret* v. *Papillon* (*b*), *Brandon* v. *Nesbit* (*c*), and *Bell* v. *Chapman*(*d*), the pleas all contain this description, and were held good. An enemy residing in this country under the protection of the government, may sue, *Wells* v. *Williams* (*e*); and all who are permitted to reside here, are under the protection of the government. *Clarke* v. *Morey* (*f*). It is the residence then that imparts the disability to the alien, or takes it away, and upon the principle that the alien enemy residing in his own country, would by means of his suit add strength to the enemy; but when residing here or in a neutral territory, the enemy gains nothing by his privilege. *Sparenburgh* v. *Bannatyne* (*g*). In the latter case serjeant *Marshall* says: " The " disability is now confined to two cases, viz. where the " right sued for is acquired in actual hostility, *Anthon* v. " *Fisher*, *Doug.* 646, *n.*, and where the plaintiff being an " alien enemy is resident in the enemy's country. *Brandon*

(*a*) 8 *D. & E.* 166.          (*d*) 10 *Johns.* 183.          (*f*) 10 *Johns.* 69.
(*b*) 4 *East* 502.               (*e*) 1 *L. Ray.* 282.          (*g*) 1 *Bos. & Pul.* 163.
(*c*) 6 *D. & E.* 23.

" v. *Nesbit*, 6 *T. R.* 23., *Bristow* v. *Towers*, 6 *T. R.* 35." An *Englishman* not residing in *England*, may be considered as having expatriated himself; he ought for the purposes of suit, as he is for the purposes of commerce, to be considered, as belonging to the country where he is domiciled. Any other principle would entail the disability upon a natural born *Englishman*, although he had resided nearly all his life in a foreign country. In *Clark* v. *Morey*, *Kent* J. says, " it seems *now* to be the law of *England*, that the plea alien " enemy must aver commorant in the country of the enemy."

*Biddle* and *Dallas* contra. The liberality of modern war has exempted debts from confiscation, but it leaves the question of suit upon the old ground. We rely on the general rule that an alien enemy residing out of the country cannot support an action. The sovereign with whom we are at war, represents all his subjects; and he being an enemy, they are such, without regard to the place of abode. *Vattel, lib.* 3. *c.* 4, *sec.* 70, 71. 73. 75, 76, 77. When a suit is permitted in consequence of residence here, it is not that residence gives or takes away the privilege, but it is that from residence is presumed a safe conduct and a special protection of the government, which excepts the particular case from the general disabilities of the enemy character. 1 *Bl. Comm.* 372. *Wilcocks* v. *Henry* (a), *Co. Litt.* 129. b, *Hargrave's note* 203. 1 *Com. Dig.* 415. *Alien C. 5.* All that is required in the plea, is to shew that he is an *alien enemy;* and if any change has taken place in the *English* rule, it is since the revolution, and does not affect us. But in fact there is no change which can affect our plea. The old form of plea averred that the plaintiff was an alien born under the dominion of a foreign power, between whom and the king there was then war; and by the events of the *French* revolution this bore with severity upon native *Frenchmen*, who were in the service of the allies, or had received a commission from *England.* Hence it became necessary to aver residence in the enemy's country, or that the plaintiff himself was an alien enemy. The old form would not answer. But if the plea contains an averment that the plaintiff is an alien enemy, there is no authority for saying that his residence in the enemy country

(a) 1 *Dall.* 71.

RUSSEL
*v.*
SKIPWITH.

must also be averred. In *Casseres* v. *Bell*, the plaintiff was not stated to be an alien enemy, nor could it be collected from the plea. *Lebret* v. *Papillon* was the first case in which residence in the enemy country was stated, and that arose from the peculiar situation of *France*. All the cases shew that the plea of *alien enemy* is good. In *Openheimer* v. *Levy* (*a*), the plea was held bad, because it did not shew that the plaintiff was an alien enemy. It is true that in several of the pleas, residence in the enemy country is unnecessarily averred; but this was surplusage, which did not vitiate. If the plaintiff alleges expatriation, the right of which is still *vexata quæstio*, he should reply to the plea; it is impossible for the defendant to know what the plaintiff is doing in a neutral country, if he is there at all. By the plaintiff's argument, every officer of the *British* government, not residing in *British* territory, might now maintain a suit here.

TILGHMAN C. J. This was an action of covenant for the recovery of a debt. The defendant pleaded that the plaintiff is an alien enemy, born out of the allegiance of the *United States*, and under the allegiance of the king of the *United Kingdom* of *Great Britain* and *Ireland*, between whom and the *United States* there is war; and that the plaintiff is not a citizen of the *United States*, nor resident within the same. To this plea there was a demurrer and joinder. The case must be determined upon the principles of the common law, not being affected by the treaty between the *United States* and *Great Britain*, which only provides against the *confiscation* or *sequestration* of private debts. The rigour of the ancient law has been softened by increased civilization, and the principle has gradually gained ground, that the contracts of individuals ought not to be affected by the quarrels of nations. Between some nations, it is stipulated by treaty, that a state of war shall not prevent the recovery of debts; but where no treaty exists, although it is against usage to *confiscate*, yet the utmost stretch of modern refinement has never gone to the extent of permitting the maintenance of an action by an alien enemy, except under particular circumstances. It has never been supposed that one, who was *himself an enemy*, and the subject of a sovereign at war

(*a*) 2 *Stra.* 1072.

with the *United States*, could support an action, unless he resided within the *United States*, under the protection of the government express or implied. But there has been a difference of opinion, and a change of the law, with respect to the manner in which the defendant may avail himself by plea of the plaintiff's disability. It was formerly sufficient to set forth that the plaintiff was an *alien*, born out of the allegiance of the king, in whose courts the suit was brought, and within the allegiance of another king at war with him. From these circumstances, it was taken to follow as a necessary consequence, that the plaintiff was *himself an enemy*. But the injustice of this conclusion was manifested by the situation of the kingdoms of *Europe* after the *French* revolution. *France* is now at war with almost all *Europe;* yet many persons, born under the allegiance of *Louis* XVI., are fighting against *France*, under the standard of the allied powers. Suppose an action then to be brought in *England*, by a *Frenchman* holding a commission under *England* in the war against *France*, it would be no answer to the action to say, that the plaintiff was born under the allegiance of *Louis* XVI., and that war now exists between *France* and *England*. In order to disable the plaintiff, you must go farther, and say that he himself is an enemy, or adhering to the enemy. But there is another circumstance to be attended to. Although the plaintiff be an enemy, yet if he resides in the country where the suit is brought, under the protection of the government, he may support an action. Therefore, if the defendant in his plea states, that the plaintiff resides in the country, it lies upon him to shew that he is not under the protection of the government. This I take to be the substance of the modern decisions, to which I shall presently advert. But it never can be supported, that it is necessary for the defendant to aver that the plaintiff is residing in the country of the enemy. Upon this principle, suits may be maintained by every officer, soldier and seaman of the *British* army and navy *out of the king's dominions*, by all *British* ministers at foreign courts, and by all *British* subjects in foreign countries, although employed as agents for their own government, or in their capacity of merchants or otherwise adhering to their king. The plea in the case before us, does not state that the plaintiff *adheres*

to the enemy, but it states that he is *himself* an enemy, which is stronger. A plea however is not the worse for saying that the plaintiff is an enemy, and that he is adhering to the enemy, and resides in the country of the enemy, because surplusage does not vitiate. Such was the plea in *Lebret* v. *Papillon*, 4 *East* 502. Although not thought to be in very good form, yet it was held good, because, as Lord *Ellenborough* observed, " it appeared from the whole " record *that the plaintiff was an alien enemy.*" The same in substance was the plea in *Brandon* v. *Nesbitt*, 6 *T. Rep.* 23. There also it was held good, *on the ground that an action will not lie either by or in favour of an alien enemy;* and Lord *Kenyon* declared, " that they had not found a sin-" gle case in which the action had been supported in favour " of an alien enemy." The plaintiff's counsel rely on the case of *Casseres* v. *Bell*, 8 *Term Rep.* 166. The plea was that the plaintiff was *an alien* born in foreign parts, viz. in *Holland*, out of the allegiance of the king &c., and that there was war between the king and the persons exercising the powers of government in *Holland* &c. It was held bad, and with great reason, for it neither appeared that the plaintiff was an enemy or adhered to the enemy. Lord *Kenyon* in delivering his opinion says, that the plea must negative all those facts, which if shewn by the plaintiff, would enable him to support an action, such as that the plaintiff was residing in *England* under the king's protection &c.; and that the plaintiff shall not be put to shew them by a replication. He is satisfied of this he says from the case of *Denier* v. *Arnaud*, 4 *Mod.* 405, the original record of which he had examined, and *Openheimer* v. *Levy*, 2 *Stra.* 1082. Of the original record in *Denier* v. *Arnaud* we cannot judge, not being in possession of it; but from the case, as reported, it appears that the plea was, that the plaintiff was " *alienigena*, " *in Regno Franciæ sub ligiantia adversarii domini regis* " *oriundus.*" It struck the Court, that *oriundus*, importing future time, was not an affirmative expression, and that *natus* should have been used instead of it; this occasioned the doubt, but the Court having taken time to consider of it, held the plea good on the authority of precedents cited from *Rastal.* It appears also that the best *Roman* authors use the word *oriundus* to denote past time, contrary to the

general significations of participles of that termination. *Openheimer* v. *Levy* is considered as accurately reported by Sir *J. Strange*. The plea was " that the plaintiff was an " alien, born at *Vienna*, under the dominion of the king of " the *Romans* &c.;" held to be bad, because an *alien friend* may support an action, and it is not said that the plaintiff was an *alien enemy*. The last case which I shall mention, and on which the plaintiff's counsel principally relied, is *Clarke* v. *Morey*, 10 *Johns. N. Y. Rep.* 69. The plea, which was held bad on demurrer, contained in substance that the plaintiff was born out of the allegiance of the *United States*, and within the allegiance of the king of the *United Kingdom* of *Great Britain* and *Ireland*, between whom and the *United States* there was war &c., and that the plaintiff so being such alien born &c., and an enemy of the *United States*, and not made a citizen &c., came into the said *United States*, and still remains therein without letters of safe conduct from the President of the *United States*, or any license to remain in the *United States*. The principle on which this case was decided, is agreeable to what I have already declared to be my opinion. An enemy may maintain an action if residing in the *United States* under the protection of the government. That this was the ruling principle, appears from the following expressions of the Chief Justice, who delivered the opinion of the Court. " In the case be-. " fore us, we are to take it for granted, (for the suit was " commenced before the present war) that the plaintiff came " to reside here before the war, and no letters of safe con- " duct were therefore requisite, nor any license from the " President. The license is implied by law and the usage of " nations. If he came here since the war, the license is also " implied, and the protection continues until the executive " shall think proper to order the plaintiff out of the *United* " *States;* but no such order is stated or averred." There is nothing in this case controverting the fundamental principle, that an *alien enemy* cannot sue unless he be under the protection of the government. I am therefore of opinion that the defendant's plea is good, because it shews the plaintiff to be an alien enemy, without any circumstance from which the protection of the government can be implied. But possibly the truth may be that Mr. *Russel*, although born a

*British* subject, may at present be neither an enemy nor adhering to the enemy. And as I trust that the Courts of *Pennsylvania* will always be forward in administering justice to aliens, on the most liberal principles recognized by the most civilized nations, I shall be for permitting the plaintiff's counsel to withdraw their demurrer, and plead by way of replication any facts in favour of their client, which the truth of his case will justify.

YEATES J. The plaintiff in this instance by his demurrer has confessed the truth of the facts set out in the defendant's plea, provided those facts are well and sufficiently pleaded. The plea states that the plaintiff is an alien enemy, born out of the allegiance of the *United States* of *America*, and within the allegiance of a foreign sovereign, to wit, the King of the *United Kingdom* of *Great Britain* and *Ireland*, and is not a citizen of the said *United States* of *America*, nor resident within the same; and that since the last continuance of the plea, a public war has been commenced and is now carried on between the King and government of the *United Kingdom* of *Great Britain* and *Ireland* and their dependencies, and the said *United States* of *America* and their territories. To this it is objected, that in such pleas as the present, it is indispensably necessary that every fact should be stated affirmatively, which may oust the plaintiff from his right of action; and that the commorancy of the plaintiff in the *British* Kingdom or its dependencies is essentially necessary for this purpose. This seems to be the modern *English* law as recognized by *Kent* Chief Justice, 10 *Johns.* 74, *Clark* v. *Morey*, founded on the case of *Lebret* v. *Papillon*, 4 *East* 502, and seems to have been adopted in *New York* in *Bell* v. *Chapman*, 10 *Johns.* 183.

But our decision herein must be governed by the state of the law as it existed amongst us prior to our municipal act of 28th *January* 1777. For by that statute, the *common law*, and such of the statute laws of *England*, as had *theretofore* been in force amongst us, were declared to be binding on the inhabitants of this state.

The general principle laid down in the books is, that an alien enemy cannot support a suit in a court of justice; his rights are suspended during the war. The ground of the

restriction and reason of the law is, that if he was permitted to maintain an action, he would have it in his power to withdraw the money recovered, and add it to the funds of his native country. In vain have I searched the entries, reports and elementary treatises, for any case wherein it has been held previously to 1777, that an alien enemy residing in a neutral country may maintain an action. The tenth article of the *British* treaty of 1795 does not legalize such a proceeding. I will not pretend to determine, what political events gave birth to an alteration of the *English* law in the particular under consideration; but it appears clear to me that the residence of an alien enemy in a neutral country cannot form an exception to the reason or policy of the general principle; because if he can withdraw the money into a neutral country, he may readily transfer it from thence into his native kingdom. Odious as this branch of the law may be, inasmuch as in its operation it materially affects the private rights of individuals, it is nevertheless binding on us. I am therefore of opinion that the demurrer should be overruled, and that the plaintiff should be at liberty to reply to the plea if he shall deem it advisable, upon payment of the costs incurred since his demurrer.

BRACKENRIDGE J. concurred with the Chief Justice.

Demurrer overruled, with liberty to reply.