## FRONKLING v. BERRY.

[88 South. 331, No. 21470.]

1. FRAUDS, STATUTES OF. *Verbal lease, constituting completed contract, held not unenforceable under statute.*

A lessee, who has entered into possession of land under a verbal lease which was not to be performed within one year and has completed the contract, is liable for the rent; and when a lessor has exercised a contractual right to terminate a verbal lease at the end of a yearly period, this constitutes the lease a completed contract, and the mere failure to discharge mutual monetary obligations on a verbal contract otherwise completed does not render such contract unenforceable under the statute of frauds.

2. WAR. *Alien enemy may defend and hence may recover property distrained.*

A proceeding to recover property which has been seized under a distress for rent is essentially defensive in its nature, and an alien enemy, whose property has been seized under a distress for rent, may maintain the statutory proceedings to recover the property and assert such defensive rights as he may have under the lease.

APPEAL from circuit court of Coahoma county.

HON. W. A. ALCORN, JR., Judge.

Action by Willis Fronkling against Mary C. Berry. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*John W. Crisler and Montgomery & Crisler, for appellant.*

The right of an alien enemy to defend a suit has never, so far as we have been able to find, been questioned by any court of last resort. We refer the court to the authorities collated under paragraph B, styled "Right to Defend," Ann. Cas. 1917C, page 211. We set out here an extract from one of the opinions cited there, this extract being also here quoted:

"To allow an action against an alien enemy to proceed and to refuse to allow him to appear and defend himself would be opposed to the fundamental principles of justice. No state of War could, in my view, demand or justify the condemnation by a civil court of a man unheard." *Robinson* v. *Continental Ins. Co.*, (1915) 1, K. B. (Eng.) 155, etc.

The supreme court of the United States speaking through Mr. Justice SWAYNE, in the case of *McVeigh* v. *U. S.* 20 U. S. (L. Ed.) 80, a case in which the trial court had ordered the answer of the respondent, an alien enemy, stricken from the files, and had granted a decree *pro confesso* made the following observation:

"In our judgement the district court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. As we are *unaminous* in this conclusion, our opinion will be confined to that subject. The order, in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there, he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact, and the right administration of justice." (Citing authorities.)

"Whether the legal *status of the* plaintiff in error was or was not that of an alien enemy, is a point not necessary to be considered; because, apart from the views we have expressed, conceding the fact to be so, the consequences assumed would by no means follow. Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country (citing authorities) it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defense."

*M. E. Denton,* for appellee.

By his own testimony on page 35 of the record appellant shows that at the time this controversy arose, he was in jail. On page 89 and 99 it is shown that he had been committed to imprisonment by the president as a German alien enemy. Thereafter he filed a petition for *habeas corpus* in the federal court at Clarksdale but on November 11, 1918, after the armistice, this writ was dismissed by the federal court and appellant remanded to custody. Sometime after the armistice, he was admitted to bail and still later he was released without bail by the federal district attorney. But we are still at war with Germany and appellee is still under parol. These adjudications by the President and by the federal court were final and could not be questioned by appellant except by appeal. The rule is universal that alien enemies in time of war will not be granted any relief by the courts which constitute a part of the very Government which such enemy is seeking to destroy. This rule should apply with special force to spies, and I cannot agree that the fact of such enemy being in this county, rather than in the ranks of the enemy army affects this rule. The latest case I find on the subject is that of *Heiler* v. *Goodwin Motor, etc., Co.,* (1918), 3 American Law Reports Annotated, 336 and note.

W. H. COOK, J., delivered the opinion of the court.

The defendant, Mrs. Mary C. Berry sued out a distress for rent against the plaintiff, Willis Fronkling, seeking to recover rent alleged to be due and in arrears by virtue of a verbal lease of certain lands for a term commencing in 1916 and ending with the close of the year 1918, and in her affidavit she claimed a lien upon certain agricultural products for the sum of three hundred dollars, the amount of rent due for the year 1918. Subsequently the plaintiff, appellant here, in the manner provided by statute, instituted his replevin suit in the circuit court to recover

possession of the property, and upon the trial, in response to a peremptory instruction, there was a judgement for defendant, from which this appeal was prosecuted.

The testimony offered by appellant was substantially as follows: That in the early part of the year 1916 he entered into a verbal contract with appellee to rent certain farm lands for the years 1916, 1917, and 1918, for an annual rental of three hundred dollars; that he entered into the possession of the property under this verbal lease, but, being dissatisfied with the condition of the farm and the improvements thereon, he proposed to appellee a change in the terms of the contract; that a new contract or agreement was finally consummated, under the terms of which appellant agreed to make, at his own expense, all the improvements necessary to put the farm in good condition, provided appellee would rent him the property for the additional years of 1919 and 1920, but in the event appellee declined to extend the lease for these two additional years, then she was to pay appellant the reasonable value of all improvements put on the property by appellant; that under this agreement appellant remained in possession of the property for the years 1916, 1917, and 1918, and during this time made valuable permanent improvements on the land to the value of four hundred, thirty-five dollars and sixty-five cents; that in the latter part of the year 1918 appellant was notified that the property would not be leased to him for the two additional years, and thereupon he demanded to be compensated for the improvements which he had placed upon the premises; that this payment was refused, and thereupon appellant declined to pay the rent for the year 1918—hence the distress for rent due for that year.

The testimony offered by appellee was to the effect that the only contract between the parties was the verbal lease for the definite period of three years at a fixed rental of three hundred dollars per year, and that under the terms of this lease all necessary repairs or improvements were to be made by appellant at his own expense. Appellee

very positively denied, that this contract was ever modified or changed, and denied that she ever agreed to extend the lease to cover the two additional years.

At the conclusion of the testimony each of the parties, by a motion for a peremptory instruction, sought to invoke the statute of frauds against the claim of the other but we do not thing this defense was available to either of them.

While it is true that the only express contract for the payment of rent was an oral agreement which was not to be performed within one year, yet, under every phase of the evidence, this was a completed contract, and the lessee was clearly liable for the rent. Upon the other hand, if the testimony offered on behalf of appellant was true, appellant had exercised her contractual right to terminate the lease at the end of the third year, and this constituted the second or modified contract a completed contract, and nothing remained to be done but to discharge mutual monetary obligations, and a mere failure to discharge a monetary obligation on a verbal contract otherwise completed is not sufficient to render the contract unenforceable under the statute of frauds. *Duff* v. *Snider,* 54 Miss. 245; *Washington* v. *Soria,* 73 Miss. 674, 19, So. 85, 55 Am. St. Rep. 555. In discussing this principle in *Duff* v. *Snider, supra,* Justice CHALMERS said:

"In the notes to the case of *Peter* v. *Compton,* in 1 Smith's Lead. Cas. 438, it is said to be universally conceded that no one can receive or enjoy the goods or services of another, and then rely upon the statute of frauds as an excuse for not paying for them, and that the weight of authority seems to be that the recovery in such cases must be according to the terms of the contract, and not merely for what the consideration would have been reasonably worth, if estimated at its market value, without reference to the price set upon it by the parties."

Again, in the latter case of *Washington* v. *Soria, supra,* the court said:

"It is uniformly held that, after full performance of an oral agreement, the statute of frauds does not apply. The statute neither declares an oral contract to be illegal nor void. It does not prohibit the contract, but simply declares that no action shall be maintained to enforce it. Where the contract has been fully executed by one of the parties, and nothing remains to be done by the other than to pay the consideration, relief is very generally afforded at law by permitting the plaintiff to recover, not upon the special contract, but in assumpsit or on the case, upon the promise implied by law, for the statute has no application to promises implied by law. 2 Reed on Statute of Frauds, section 640. Where there has been a special contract fully performed by the plaintiff, he may recover either in case, on the contract or *in indebitatus assumpsit* for the consideration. *Fowler* v. *Austin*, 1. How. (Miss.) 156; *Hill* v. *Robeson*, 2 Smed. & M. 541; *Cutter* v *Powell*, 2 *Smith's* Lead. Cas. 1; and note; 2 Devlin on Deeds, section 10474."

There was a sharp conflict in the testimony as to whether the first contract was ever modified or changed, and whether a second or modified contract was in fact ever made, and these disputed issues of fact should have been submitted to the jury under appropriate instructions.

After the conclusion of the testimony in the court below the appellee was granted leave to file a special plea setting up that appellant was an alien enemy of the United States government, and therefore could not sue in the courts of this state. On the record made in this case, this plea is not maintainable. While under our statutes a tenant who seeks to recover property seized under a distress for rent is denominated a plaintiff, yet the proceeding is distinctly defensive in its nature. Upon the institution of a distress for rent by a landlord or lessor, the only method provided by which the tenant or lessee may defend, or assert such defensive rights as he may have, is that followed in this case, and, whatever the form of the action, it cannot be doubted that the proceeding is essentially defensive. The authorities ap-

pear to be uniform in holding that an alien enemy may defend when he is sued in the courts of the hostile country. In *McVeigh* v. *United States,* 78 U. S. (11 Wall) 259, 20 L. Ed. 80, the Supreme Court of the United States said:

"In our judgment the district court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. As we are unanimous in this conclusion, our opinion will be confined to that subject. The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no *locus standi* in that forum. If assailed there, he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice. *Calder* v. *Bull,* 3 Dall. 388; *Bonaker* v. *Evans,* 16 Ad. & E. (N. S.) 170; *Capel* v. *Child,* 2 Cromp & J. 574. Whether the legal *status* of the plaintiff in error was, or was not, that of an alien enemy, is a point not necessary to be considered, because, apart from the views we have expressed, conceding the fact to be so, the consequences assumed would by no means follow. Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country (*Clark* v. *Morey,* 10 Johns. 69; *Russell* v. *Skipwith,* 6 Binn. 241), it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defense."

See also Ann. Cas. 1917C, 211, and authorities there collected.

It follows from the views herein expressed, that this case must be reversed and remanded.

*Reversed and remanded.*