### VERANO v. DeANGELIS COAL CO., Inc.
#### No. 509.

District Court, M. D. Pennsylvania.

April 7, 1942.

See, also, 41 F.Supp. 954.

George W. Ellis, A. M. Lucks, and David J. Reedy, all of Scranton, Pa., for plaintiff.

Joseph P. Brennan, of Scranton, Pa., Arthur A. Maguire, of Wilkes-Barre, Pa., and C. P. O'Malley, of Scranton, Pa., for defendant.

JOHNSON, District Judge.

On August 21, 1940, plaintiff instituted this action against defendant to recover damages for an occupational disease allegedly contracted because of the negli-

gence of defendant, his employer. Plaintiff in his complaint stated that he is a subject of the King of Italy and that he had resided within this district for the past twelve years at the time of the commencement of this action. It appears he has resided within the United States since 1916. The United States having declared the existence of a state of war between the United States and the Government of Italy on December 11, 1941, defendant has moved to dismiss or stay this action because plaintiff has become an alien enemy and is precluded from maintaining this suit in the Courts of the United States. After hearing the argument this court on January 23, 1942, entered an order staying the proceeding for the duration of the war. Upon request of plaintiff's counsel a rehearing was granted and the question was submitted upon briefs of both parties.

The question presented for our determination is whether under the laws of the United States, and the proclamations of the President pursuant thereto, a resident alien of Italian citizenship may maintain a suit in the United States courts. In view of the authorities to which our attention has been directed by plaintiff's brief, we are of the opinion that this must be answered in the affirmative and that the order previously entered staying further proceedings must be vacated.

The plea of "alien enemy" has been regarded with disfavor in England and the United States as a hard and odious plea. Gradually it was recognized; first, that a resident subject of a country at war with the country of the forum could maintain a suit provided it appeared that his presence in the country of the forum was under the protection of the government of the forum, Wells v. Williams, 1 L.Ray. 282; secondly, that a plea of "alien enemy" must go beyond the averment of the plaintiff's alien enemy citizenship and indicate that the plaintiff was himself "an enemy, or adhering to the enemy", and when it is shown the plaintiff resides in the country where the suit is brought, it is necessary that the defendant "show that he is not under the protection of the government," Russel v. Skipwith, 1 Serg. & R. 310, 6 Bin. 241; thirdly, it was held in Clarke v. Morey, 10 Johns, N.Y., 69, that tangible evidence of the plaintiff's being in the country of the forum in the nature of letters of safe conduct or license was not

required to bring the plaintiff within the exception of being under the protection of the government as this was implied "by law and the usage of nations" from the fact that the plaintiff resided there prior to the war. Thus it has been said in Russel v. Skipwith, supra, "the rigor of the ancient law has been softened by increased civilization, and the principle has gradually gained ground, that the contracts of individuals ought not to be affected by the quarrels of nations. * * * Although the plaintiff be an enemy, yet if he resides in the country where the suit is brought, under the protection of the government [which is implied from the fact of former residence and the absence of a request to depart], he may support an action."

■ Moreover, the reason of the more severe early common law rule denying the right to bring an action was that the moneys recovered would be withdrawn by the successful plaintiff and added to the "funds of his native country." Russel v. Skipwith, supra. Legislation having been passed providing for the seizure of property belonging to alien enemies situate within the United States, with licensing restrictions governing their access to it, any judgments which are recovered can be controlled to prevent their militating against the United States or giving aid or comfort to the enemy country of which the plaintiff is a subject. This was the reasoning of the New York Supreme Court in the recent case of Brown v. J. P. Morgan & Co., Inc., 177 Misc. 763, 31 N. Y.S.2d 815. The reason for the original rule having ceased, the rule ceases.

■ It is clear that the decision of the United States Supreme Court in Ex parte Don Ascanio Colonna, 62 S.Ct. 373, 86 L.Ed. —— denying the petition of the Royal Italian Ambassador for a writ of prohibition and mandamus, does not bar a suit by a resident Italian subject inasmuch as it was squarely within the definition of "enemy" in the Trading with the Enemy Act, section 2(b), 50 U.S.C.A.Appendix, § 2 (b) and the suits interdicted by the Act in section 7(b), 50 U.S.C.A.Appendix § 7(b). Although there is some conflict in the decisions, we are of the opinion that the better reasoned cases are those which permit a resident alien who is a citizen of a country with which the United States is at war to bring or maintain a suit in the courts of the United States. Speidel v. N. Barstow Co., D.C., 243 F. 621; Kaufman v. Eisenberg & City of New York, 177 Misc. 939, 32 N.Y.S.2d 450, Jan. 19, 1942; Anastasio v. Anastasio, D.C.D.C., March 12, 1942, 44 F.Supp. 725; Matter of Kohn, Calif.Sup.Ct., City of Los Angeles, Feb. 18, 1942.

■ The effect of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., is set forth very ably in Uberti v. Maiatico, D.C.D.C., Mar. 11, 1942, 44 F.Supp. 724. "The Trading with the Enemy Act of 1917 has the effect of confirming this general rule (that only nonresident aliens are barred from bringing suits). Section 7(b) in terms only prohibits prosecution of suits by 'enemy' aliens. Broadly speaking, Section 2(a) and 2(b) of the Act defines an 'enemy' as a person of any nationality resident within the territory of any nation with which the United States is at war. Under subdivision (c) the President is authorized to proclaim as an 'Enemy' citizens of an enemy nation, although resident in the United States, if the safety or successful prosecution of the war so requires. No such proclamation has been issued. Therefore, no bar prevails against a citizen of an enemy nation residing in the United States, from suing in its courts." In a statement of the Attorney General, issued Jan. 31, 1942, reported in 10 U.S.Law Week, sec. 2, page 2493, it was pointed out that no proclamations of the President, authorized by subdivision (c) of section 2 of the Trading with the Enemy Act, which would include within the term "enemy" individuals who are subjects of any nation with which the United States is at war, although resident in the United States, has been issued. Proclamations dealing with the detention of specified aliens and otherwise governing the conduct of enemy aliens are pursuant to the authority vested in the President by 50 U.S.C.A. § 21.

And now, for the reasons above set forth it is decreed that the order of this court entered January 23, 1942, staying proceedings in the above case for the duration of the war be, and hereby is, vacated and set aside and the parties are ordered to proceed with the trial.