**Muhlfelder d.b.a. CERTIFIED COMPUTER SOLUTIONS INC.,**

v.

**RIETH & ANTONELLI COMPANY.**

2005-Ohio-5936.]

Cleveland Municipal Court.

No. 2003 CVF 33295.

Decided March 16, 2005.

Michael J. Lerner, for plaintiff.

Craig Hairston, for defendants.

JOAN SYNENBERG, Judge.

{¶ 1} Judge Mary Eileen Kilbane assigned Magistrate William F.B. Vodrey to hear the trial in this case, pursuant to Civ.R. 53. Magistrate Vodrey held the trial on December 14, 2004, and January 24, 2005. Judge Kilbane has now begun her duties on the Court of Appeals of Cuyahoga County, and the undersigned judge has inherited much of her caseload. After review of the case, and consistent with the magistrate's recommendation, the court's decision is as follows.

{¶ 2} Pursuant to Civ.R. 21, Rieth & Antonelli Company is substituted for all originally named codefendants. Judgment is granted for defendant on the complaint. Judgment is granted for plaintiff on the counterclaim. The court's findings of fact and conclusions of law are attached hereto.

## FINDINGS OF FACT

{¶ 3} Plaintiff is an independent computer consultant. Although his complaint was filed in both his own name and that of "Certified Computer Solutions, Inc.," plaintiff testified that Certified Computer Solutions is not incorporated. He is cautioned not to indicate otherwise in any future court filings.

{¶ 4} In January 2003, defendants responded to an advertising postcard sent by plaintiff. Defendants, partners of a family law firm, were having recurring problems with their client-billing software and were frustrated by the general slowness and unreliability of their office computer system. Plaintiff met with defendants and, on January 8, 2003, sent them a written proposal. Defendants liked it and hired plaintiff to improve the system. The parties did not have a written contract. Plaintiff testified that defendants did not choose the optimal (and most expensive) solution that he suggested but that he did his best given the decisions they made. He detected and removed many computer bugs and viruses that he found on the firm's computers, installed MicroSoft Windows XP software on several of the computers, installed RAM boards for additional memory capacity, recovered TimeSlips data lost when the system crashed, and replaced memory modules and several failing items of the law firm's hardware. Codefendant Dominic Antonelli testified that as far as he was aware, plaintiff did all of the work shown on the invoices that plaintiff submitted.

{¶ 5} Defendants testified that neither of them is particularly "computer literate" and that they heavily relied upon plaintiff's advice. As bad as things were before plaintiff began his work, they testified, the system was "a nightmare" afterwards. The system slowed to a crawl, and the number of computer crashes or freezes was not significantly reduced.

{¶ 6} By March 2003, defendants brought in Dean M. Boland to advise them. Boland is a lawyer in private practice and a principal of Boland Consulting LLC, a law and technology consulting firm. A former assistant prosecuting attorney of Cuyahoga County, he has extensive computer and office-technology experience and has been qualified as an expert witness on questions of law and technology in United States district courts in Oklahoma and Texas, as well as in three Ohio courts of common pleas and one other Ohio municipal court. He is a columnist for the Cleveland Bar Journal on law and technology, has been an adjunct professor at Case Western Reserve University School of Law, and has often taught Supreme Court-approved continuing-legal-education courses on law and technology. At trial, on motion of the defense and over plaintiff's objection, Boland was certified as an expert witness pursuant to Evid.R. 702.

{¶ 7} Boland strongly disagreed with much of what plaintiff had proposed. In his opinion, defendants' computer system was fast becoming obsolete, had reached its limits in terms of memory capacity and speed, was overburdened by the demands being placed upon it, and ought to be replaced. Relying on Boland's advice, defendants spent $8,060.55 to upgrade and improve their computer system. Due to Boland's connections in the computer industry, defendants enjoyed a hefty discount in their purchases of hardware and software. Boland and a networking assistant, Paul Knapp, completed the project, and defendants testified that they were very pleased with the system's performance thereafter. At trial Boland testified that in his expert opinion, plaintiff's proposals and work had not adequately addressed defendants' concerns and had left them, in some ways, worse off than they had been before. Installing Windows XP software on the firm's aging computers was, as Boland put it, "like putting high-quality fuel in a Yugo."

{¶ 8} At trial, the witnesses disagreed as to the nature of the law firm's computer problems, when plaintiff began his work, when he finished, when (if ever) he learned of defendants' dissatisfaction with his work, whether or not defendants either understood or fully accepted his advice, and whether plaintiff did what he had been hired to do. It was clear from the testimony, however, that defendants had not been wholly candid with plaintiff as to their dissatisfaction, and kept paying him long after Boland began his work. No written evidence was submitted in which either defendant expressed dissatisfaction with plaintiff's services at any time. Over time, defendants paid plaintiff $2,500 for his work.

{¶ 9} Although plaintiff originally sought $2,815, he amended his complaint at trial to seek $1,315. Defendants counterclaimed for $2,513.

## CONCLUSIONS OF LAW

{¶ 10} At trial, a court must determine the credibility of witnesses and the weight to be given the evidence. *In re Lieberman* (1955), 163 Ohio St. 35, 56

O.O. 23, 125 N.E.2d 328; *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 36 O.O.2d 288, 219 N.E.2d 221. The quality of evidence is more important than its quantity. If trial testimony or other evidence is in conflict, the court must decide which to believe and which to disbelieve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 11} All of the witnesses in this case were generally credible. However, plaintiff's credibility suffered when he gave inconsistent testimony as to his awareness of codefendant Richard Rieth's dissatisfaction with his work, as to the extreme slowness of the law firm's computer system after he installed MicroSoft Windows XP software, and as to his January 25, 2003 offer to accept a lump-sum payment of $1,000 in full satisfaction for what he believed the firm still owed him, after which he would leave the firm and never return.

{¶ 12} At the conclusion of the evidence and pursuant to Civ.R. 21, defendants moved to substitute "Rieth & Antonelli Company," the actual name of the law firm, for the four originally named codefendants (Richard Rieth, Dominic Antonelli, and each doing business as the law firm). The court took this motion under advisement at trial and now grants it. All of Richard Rieth's and Dominic Antonelli's dealings with plaintiff were as partners of the law firm, not in their personal capacities. Plaintiff was hired to assist the law firm, not these individuals, and the law firm is clearly the real party in interest. Civ.R. 17 and 21; *W. Clermont Edn. Assn. v. W. Clermont Local Bd. of Edn.* (1980), 67 Ohio App.2d 160, 21 O.O.3d 457, 426 N.E.2d 512.

{¶ 13} It is a basic tenet of contract law that a binding agreement will not be deemed to have been formed unless the parties have had a meeting of the minds, through the presentation of an offer by one side and an acceptance of that offer by the other. *Marshall v. Beach* (2001), 143 Ohio App.3d 432, 436–437, 758 N.E.2d 247. There are three "paradigm elements essential to contract formation—*i.e.* offer, acceptance, [and] consideration." *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 8, 15 OBR 22, 472 N.E.2d 765. The interpretation of a contract is a matter of law. *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 697 N.E.2d 208; *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 667 N.E.2d 949; *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 628 N.E.2d 1377. When a contract is susceptible of two or more reasonable interpretations, the resolution of the ambiguity is an issue for the trier of fact. *Cent. Ohio JVS Dist. Bd. of Edn. v. Peterson Constr. Co.* (1998), 129 Ohio App.3d 58, 716 N.E.2d 1210; *Adelman v. Timman* (1997), 117 Ohio App.3d 544, 690 N.E.2d 1332. If the interpretation of a contract requires consideration of evidence extrinsic to the contract, that, too, is an issue for the trier of fact. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144; *Inland Refuse Transfer Co. v.*

*Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

{¶ 14} Regrettably, the parties had no written contract. The Hollywood movie mogul Samuel Goldwyn (1882–1974) once remarked, "An oral contract isn't worth the paper it's printed on." *Garza v. Hensley* (Aug. 30, 1992), Ottawa App. No. 90–OT–027, 1992 WL 212175. As shown by the facts of this case, oral contracts are notoriously prone to dispute and misunderstanding, which is why the law strongly favors written contracts.

{¶ 15} Nevertheless, it is clear that the parties had an oral contract, with the requisite elements of offer, acceptance, and consideration. *Helle,* supra, 15 Ohio App.3d at 8, 15 OBR 22, 472 N.E.2d 765. In attempting to comply with the terms of that contract, plaintiff did extensive work, which, over time, was deemed almost wholly unsatisfactory by defendant Rieth & Antonelli Company's partners. However, he actually did the work, and defendant did not timely express its dissatisfaction. Plaintiff did his best to meet defendant's expectations but may have been, as suggested by the defense at trial, in over his head and incapable of ever completing the job to defendant's satisfaction. Defendant eventually did much of what plaintiff had suggested in the first place, albeit with new (and not rebuilt or upgraded old) computers, and with apparently greater skill by Boland and his assistant.

{¶ 16} When a plaintiff sues upon a contract and alleges performance that is denied by the defendant, it is incumbent upon the plaintiff to prove performance, at least substantially, of the contract according to its terms. *Enterprise Roofing & Sheet Metal Co. v. Howard Inv. Corp.* (1957), 105 Ohio App. 502, 6 O.O.2d 232, 152 N.E.2d 807; see, also, *J.A. Wigmore Co. v. Chapman* (1925), 113 Ohio St. 682, 150 N.E. 752; *List & Son Co. v. Chase* (1909), 80 Ohio St. 42, 88 N.E. 120. The plaintiff must establish, by a preponderance of the evidence, that performance was done to the satisfaction of the defendant (the customer), who, in turn, is required to appraise the work as a reasonable person would. *Ent. Roofing,* supra, 105 Ohio App. at 505, 6 O.O.2d 232, 152 N.E.2d 807; *Ashley v. Henahan* (1897), 56 Ohio St. 559, 47 N.E. 573.

{¶ 17} The Cleveland Municipal Court has broad legal and equitable powers in the cases before it. R.C. 1901.13(B). In the court's view, plaintiff is entitled to keep the money that he has already been paid but has not proven by a preponderance of the evidence that he is entitled to more. Similarly, defendant has failed to prove by a preponderance of the evidence that it is entitled to judgment on its counterclaim.

{¶ 18} Accordingly, judgment is granted for defendant on the complaint.

{¶ 19} Judgment is granted for plaintiff on the counterclaim.

So ordered.