**ALLTANK SYSTEMS,**

v.

**GRANT SYSTEMS INC.**

2011-Ohio-5453.]

Cleveland Municipal Court.

No. 2010 CVI 25026.

Decided April 12, 2011.

2

J. Gary Seewald, for plaintiff.

Andrew J. Natale, for defendant.

---

PATTON, Judge.

{¶ 1} This case was called for a Small Claims trial on March 1, 2011, before a Magistrate. Phil Havel, president and owner of Plaintiff, Alltank Systems, and Mark Drow, president and owner of defendant, Grant Systems, Inc., both appeared and were duly sworn in to testify.

{¶ 2} Plaintiff has failed to prove its case by a preponderance of the evidence. Judgment for defendant on the complaint at plaintiff's costs.

{¶ 3} The Magistrate's findings of fact and conclusions of law are hereby approved and adopted.

## Findings of Fact

{¶ 4} The evidence at trial showed that Kirk Bros. Co., Inc., which is not a party to this case, was the prime contractor for a major building project at a water reclamation facility ("the plant") owned by the city of Marysville, Ohio. Kirk Bros. hired plaintiff as a subcontractor, and plaintiff in turn hired defendant as an additional subcontractor. Plaintiff expected that defendant would both deliver and install an above-ground outside diesel fuel tank and piping, known as a duplex pump set, which was to feed an emergency backup generator. The plant was due to open, with much public hoopla and in the presence of local political and community leaders, on April 21, 2009. Plaintiff submitted purchase orders to defendant on both March 6 and November 19, 2008, and paid defendant a total of $66,231.37 for the equipment in February and March 2009.

{¶ 5} The duplex pump set was manufactured by Preferred Utilities of Danbury, Connecticut, of which defendant's owner and president, Mark Drow, is midwestern representative. Despite some unavoidable delays due to plaintiff's changes in specifications, defendant delivered the equipment to the plant, but it then didn't work to plaintiff's satisfaction. Plaintiff hired Phoenix Environmental Inc. of Whitmore Lake, Michigan for last-minute work to get the duplex pump set operating properly in time for the grand opening the next day. Plaintiff then billed defendant $1,840 for Phoenix's work and another $585 for the on-site work of plaintiff's owner and president, Phil Havel. However, by marked and returned invoices dated July 6 and December 4, 2009, defendant declined to pay. Havel conceded on cross-examination that although he expected the system would function immediately upon delivery, known in the trade by the term of art "turnkey condition," that phrase appears nowhere in the e-mailed quotation or purchase orders. Havel also conceded that plaintiff did not pay Phoenix for its work, Kirk Bros. did, and that the prime contractor did not thereafter reduce its payments to plaintiff.

{¶ 6} Drow credibly testified that defendant did just what plaintiff had hired it to do: deliver the duplex pump set, no more and no less. He noted that defendant's e-mailed quotation of November 25, 2008, specifically provided, "Installation supervision, start-up, service and operator training are **not included** as part of this proposal * * *." (Boldface sic.) Drow has had no complaints from the city of Marysville, Kirk Bros., or Phoenix as to defendant's work on the project. He denied that defendant owed plaintiff anything.

{¶ 7} Plaintiff now seeks $1,845.33 for Phoenix's and Havel's work in getting the Marysville plant's duplex pump set working properly.

4

### Conclusions of Law

██ {¶ 8} At trial, a court must determine the credibility of witnesses and the weight to be given the evidence. *In re Lieberman* (1955), 163 Ohio St. 35, 56 O.O. 23, 125 N.E.2d 328; *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 36 O.O.2d 288, 219 N.E.2d 221. The quality of evidence is more important than its quantity. If trial testimony or other evidence is in conflict, the court must decide which to believe and which to disbelieve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Both witnesses were generally credible.

██ {¶ 9} It is a basic tenet of contract law that a binding agreement will not be deemed to have been formed unless the parties have had a meeting of the minds, through the presentation of an offer by one side and an acceptance of that offer by the other, along with payment of consideration. *Marshall v. Beach* (2001), 143 Ohio App.3d 432, 436–437, 758 N.E.2d 247. There are three "paradigm elements essential to contract formation * * * [:] offer, acceptance, and consideration." *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 15 OBR 22, 472 N.E.2d 765, paragraph three of the syllabus.

{¶ 10} Regrettably, the parties had no written contract. The Hollywood movie mogul Samuel Goldwyn (1882–1974) once remarked, " 'An oral contract isn't worth the paper it's printed on.' " *Certified Computer v. Rieth & Antonelli Co.*, 135 Ohio Misc.2d 1, 2005-Ohio-5936, 841 N.E.2d 866, ¶ 14. As shown by the facts of this case, oral contracts are notoriously prone to dispute and misunderstanding, which is why the law strongly favors written contracts. Given the terms of defendant's e-mailed quotation of November 25, 2008, and the parties' subsequent dealings, however, the court is persuaded that the parties had an oral contract.

██ {¶ 11} The interpretation of a contract is a matter of law. *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 697 N.E.2d 208; *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 667 N.E.2d 949; *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 628 N.E.2d 1377. When a contract is susceptible of two or more reasonable interpretations, the resolution of the ambiguity is an issue for the trier of fact. *Cent. Ohio JVS Dist. Bd. of Edn. v. Peterson Constr. Co.* (1998), 129 Ohio App.3d 58, 716 N.E.2d 1210; *Adelman v. Timman* (1997), 117 Ohio App.3d 544, 690 N.E.2d 1332. If the interpretation of a contract requires consideration of evidence extrinsic to the contract, that, too, is an issue for the trier of fact. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144; *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271. In this case, the court is the trier of fact. Generally, the language of a contract is construed in accordance with its plain and ordinary meaning. *Karabin v. State Auto. Mut.*

*Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 10 OBR 497, 462 N.E.2d 403; *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 35. A contract provision should not be wholly disregarded because it is inconsistent with other provisions, unless no other reasonable construction is possible. Id. *Village Station Assoc. v. Geauga Co.* (1992), 84 Ohio App.3d 448, 452, 616 N.E.2d 1201.

{¶ 12} Defendant's e-mailed quotation of November 25, 2008, is the most substantive statement of the work that defendant was actually hired to do. In it, as noted above, defendant specifically stated, "Installation supervision, start-up, service and operator training are **not included** as part of this proposal \* \*." (Boldface sic.). It seems to the court that plaintiff, in its eagerness to have the plant fully functional in time for the grand opening and up against a deadline, engaged in some wishful thinking as to what defendant would do. However, defendant did just what it was hired to do and is not now liable for last-minute expenses incurred by plaintiff—or, more accurately, by the prime contractor, Kirk Bros., which is not even a party to this case.

{¶ 13} Plaintiff has failed to prove its case by a preponderance of the evidence. Judgment is for the defendant on the complaint at plaintiff's costs.

So ordered.