LEIBERG, ADMX.; PICKENS, ADMR., APPELLANT, *v.*
VITANGELI, APPELLEE.

(No. 2062—Decided October 8, 1942.)

*Messrs. Amerman, Mills, Mills, Jones & Mansfield,* for appellant.

*Messrs. Lynch, Day, Pontius & Lynch,* for appellee.

SHERICK, J.  This is an action for wrongful death commenced on November 30, 1940, by plaintiff for her sole benefit as the widow and only heir at law of the decedent.  The cause came on for trial in March of 1942.  During the course of plaintiff's cross-examination it was disclosed that she was a citizen of Germany, residing in this country.  It is evidenced that she had taken out her first papers leading towards admission to citizenship. Thereupon, defendant moved for withdrawal of a juror and continuance of the case.  This motion was sustained.

A few days thereafter plaintiff resigned her administratorship and one Virgil Pickens, a citizen of the United States, was appointed administrator *de bonis non* of the estate, in her stead.  He was next substituted as party plaintiff.  The case was re-assigned for trial, whereupon defendant again moved that the cause be continued until peace has been declared between the United States and Germany, or until such time as alien enemies are permitted by law or executive proclamation to prosecute actions in our courts.  It was also moved that the former order of continuance be maintained in full force and effect.  The court sustained the motion.  It is from this order that plaintiff appeals.

In this court appellee moves that the appeal be dismissed for the reason that the order of continuance appealed from is not such a judgment or final order as is contemplated by Section 12223-2, General Code, from which an appeal may be perfected, and that this court therefore has no jurisdiction to review the order made.

Appellant answers the motion to dismiss the ap-

peal with recognition of the rule that ordinary continuances are not final orders from which appeals may be prosecuted, but charges that in this instance the trial court misconceived the law, and the postponement which resulted therefrom was an abuse of discretion on the part of the trial judge, which affected a substantial right of plaintiff and prevented an ultimate and timely judgment in plaintiff's favor.

This court, having heard the motion, has ordered that it be held under advisement and that the cause be submitted on its merits, which has been done. As a consequence thereof, two questions now confront us. First: Did the trial court abuse its discretion and thereby violate the universally accepted rule found concisely stated under the title of Continuances in 17 Corpus Juris Secundum, 190, 193, Section 5, that, "the discretion of the trial court must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles and with a view to promoting substantial justice?" In passing, we note that the rule has found approval in *Norton* v. *Norton,* 111 Ohio St., 262, 266, 145 N. E., 253. Second: Can a negligence action previously commenced now be prosecuted and maintained in our courts by a domiciled and resident alien, who is a citizen of a country with which the United States is now at war?

It is, of course, apparent that if the motion to dismiss the appeal be sustained, the second question becomes immaterial. However, inasmuch as continuances may only be granted "in accordance with fixed legal principles," the correctness of the rule of law, which prompted it, must be inquired into, to ascertain if discretion was abused. It therefore should be apparent that the queries are co-mingled in the present instance and cannot be solved independently of each other.

In ancient times the rule was that the property of a

resident friendly alien was subject to confiscation by the state. His personal rights just did not exist, but as stated by the author of the note in 137 A. L. R., 1347:

"It is now the settled rule that a subject of an enemy country residing in the state of the forum, under license or permission of the government, express or tacit, and peacefully carrying on his ordinary vocation, is not under disability in the civil courts, and may therefore institute an action to enforce his rights during the continuance of the war, or prosecute such an action already instituted before the war."

This rule hardly finds a dissenting voice within democratic countries. Ohio in *Nyitray* v. *McAlonan*, 27 O. C. A., 545, 29 C. D., 183, subscribes to the rule. The Supreme Court, however, has never considered the question. It has, in *Industrial Commission* v. *Rotar*, 124 Ohio St., 418, 179 N. E., 135, passed upon the right of an alien enemy residing in the enemy state to maintain a civil suit in our court during war, but that is not our case.

We are not disposed to cite and comment upon any considerable number of cases. If such are of interest, they will be found gathered in the A. L. R. note previously mentioned. One case, however, which fathers the American authorities, is deserving of special attention. In *Clark* v. *Morey*, 10 Johns (N. Y.), 69, Chief Justice Kent, speaking for the court, reasons:

"In the case before us, we are to take it for granted (for the suit was commenced before the present war) that the plaintiff came to reside here before the war, and no letters of safe conduct were, therefore, requisite, nor any license from the President. The license is implied by law and the usage of nations; if he came here since the war, a license is also implied, and the protection continues until the executive shall think

proper to order the plaintiff out of the *United States*; but no such order is stated or averred. * * * Until such order, the law grants permission to the alien to remain, though his sovereign be at war with us. A lawful residence implies protection, and a capacity to sue and be sued. A contrary doctrine would be repugnant to sound policy, no less than to justice and humanity."

Appellee directs our attention to the recent case of *Bernheimer* v. *Vurpillot,* 42 F. Supp., 830. This is the only case in point which sustains the contrary doctrine. When examined it is disclosed that *Ex Parte Colonna,* 314 U. S., 510, 86 L. Ed., 379, 62 S. Ct., 373, is relied upon, and erroneously so, to our notion, because of the inescapable fact that Colonna, the Royal Italian Ambassador, was but a nominal party to the action, and the real party in interest was the Kingdom of Italy, which was barred from litigating in our courts under the Trading with the Enemy Act.

Appellee's final argument upon the law applicable to the facts of this case, is, in substance, that even if the law be as appellant contends, it is nullified by the Presidential Proclamations of December 8 and 11, 1941. Appellee is completely answered by Attorney General Biddle in his statement of January 31, 1942, Commerce Clearing House, War Law Service, Par. 9703, concerning the right of resident alien enemies to sue. The Attorney General points out that the Presidential Proclamation was not issued under the Trading with the Enemy Act, but under the Alien Enemy Act (Title 50, Section 21 *et seq.,* U. S. Code) which governs the conduct of alien enemies. He concludes:

"Accordingly, it is important to note that no native, citizen, or subject of any nation with which the United States is at war and who is resident in the

United States is precluded by federal statute or regulations from suing in federal or state courts.''

It is of interest that the federal Circuit Court of Appeals, Third Circuit, likewise answers the appellee. It granted a writ of mandamus to Bernheimers, as petitioners, directed to the District Court for the Western District of Pennsylvania, ordering it to proceed with the trial of *Bernheimer* v. *Vurpillot, supra.* See Commerce Clearing House, War Law Service, Par. 9736, as yet otherwise unreported.

The United States District Court for the middle district of Pennsylvania, in *Verano* v. *DeAngelis Coal Co., Inc.,* 44 F. Supp., 726, and the same court for the District of Columbia in *Uberti* v. *Maiatico,* 44 F. Supp., 724, sustains the Attorney General. See also, *Propper* v. *Buck,* 176 Misc., 76, 33 N. Y. Supp. (2d), 11.

We believe it may be concluded that the excerpt quoted from 137 A. L. R., 1347, is a ''fixed legal principle,'' not only of long standing but of present application. With this in mind, together with cognizance of the rule that continuances are within the sound discretion of trial courts, and are ordinarily not final orders from which appeals may be prosecuted, we choose to turn next to the trial court's reason for granting the continuance. We find it predicated in its entirety upon *Industrial Commission* v. *Rotar, supra; Bernheimer* v. *Vurpillot, supra;* and the Presidential Proclamations of December 8 and 11, 1941, all of which we have herein demonstrated to our complete satisfaction to be inapplicable to the present facts or restrictions upon the right of a resident enemy alien. It follows that, in our judgment, the trial court misconceived the law which must govern the case on its merits.

Did the court abuse its discretion in so doing? First, it may be said that the recognition of judicial discretion in matters of continuances is a wise rule. Many

things, like illness of litigants or counsel, the bringing in of indispensable parties, the inability of producing witnesses, the amendment of pleadings, the taking of depositions, the death and substitution of parties, and a host of other matters constantly arise during the course of a court action, and require that continuances be made. They are made with one thought uppermost, that is, "with a view to promoting substantial justice." All tend to create temporary delays, none of which call an action to a halt. True, the present World War might end shortly, but we are mindful that England and France fought a Thirty Years War. This speculation engenders the thought that the real party in interest might die before war ceased, or her evidence be lost or destroyed.

The order of continuance amounts to almost outlawry. She may not prosecute her action or assert her claim. If she can not prosecute her cause, she can not even perpetuate her testimony or that of her witnesses. In the language of the street, she is stopped cold. For what reason? If she procured a favorable judgment and it was satisfied, an alien property custodian might take charge thereof, if there was a probability of it reaching the enemy's land. The substantive aid to the enemy is the real reason behind denial of the rights of a resident enemy alien to litigate his cause in a civil action. It is not apparent that any such reason herein was feared or did exist. It is our judgment that the continuance was arbitrarily ordered under a mistake of law. It was not warranted upon "fixed legal principles." It did not promote, but retarded and denied substantial justice. When reason is wanting, and law is not administered, and substantial justice is denied, surely the thing done is arbitrarily done. We unhesitatingly hold that the trial court did abuse its discretion.

To our notion there is a far more serious aspect to what has been done and is now complained of. The Fourteenth Amendment to the federal Constitution provides in part, that:

"No State shall * * * deny to any *person* within its jurisdiction the equal protection of the laws." (Italics ours.)

We have previously pointed out that there is no federal statute which now denies to a resident alien enemy the right to prosecute a civil action. The Chief Executive has not proclaimed an edict against the exercise of that right. It now exists, yet the trial court arbitrarily legislates and proclaims otherwise.

But the matter does not end there. The people of this state ordained in Section 16, Article I of the state Constitution:

"All courts shall be open, and every *person,* for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." (Italics ours.)

These constitutional provisions employ the word "person," that is, anyone whom we have permitted to peaceably reside within our borders may resort to our courts for redress of an injury done him in his land, goods, person, or reputation. The real party plaintiff for whom the nominal plaintiff sues is not shown to have entered our land in an unlawful manner. We said to her, you may enter and reside with us and be equally protected by our laws so long as you conform thereto. You may own property and our laws will protect your title. All this you may have, unless and until we war with the country of your birth, and even thereafter, unless Congress or the Chief Executive ordains otherwise for the protection of the state.

We, as a people, have said to those of foreign birth

that these constitutional guaranties shall assure you of our good faith. They are the written surety to you of our proud boast that the United States is the haven of refuge of the oppressed of all mankind. But the order under review transcends all this. It sanctions what the federal amendment says a state may not do, and denies that which the people of the state have said every person may do. The order assumes imperial power. It not only nullifies constitutional guaranties, but suspends the operation of statutes. It is beyond question a gross abuse of judicial discretion.

It is therefore the judgment of this court that the motion to dismiss the appeal is not well taken and the same is overruled. We further find that the trial court erred and that plaintiff is entitled to prosecute his action for the benefit of the resident enemy alien. It is ordered that the judgment be reversed and the cause remanded with instruction that the case be set for trial in its regular order.

*Judgment reversed.*

LEMERT, P. J., and MONTGOMERY, J., concur.