The STATE of Ohio

v.

BOB MANASHIAN PAINTING.█

2002-Ohio-7444.]

Cleveland Municipal Court, Ohio.

No. 2002 CVH 21071.

Decided Nov. 12, 2002.

David B. Pariser, for plaintiff.

Robert Z. Manashian, pro se, for defendant.

Mary Eileen Kilbane, Judge.

## INTRODUCTION

{¶ 1}   On September 28, 1999, the court entered judgment for plaintiff against defendant in the sum of $482.10, with statutory interest to run from the date of judgment.   The court now has before it a "Certified Demand for Proof of Jurisdiction," "Nunc Pro Tunc Estoppel at Law and Public Notice Rescission

Affidavit," and other documents prepared by Robert Z. Manashian, apparently a principal of defendant, and filed on October 17, 2002. Manashian ("defendant") asserts, among other things, that he is a "state citizen and principal * * * not a sub class U.S. citizen [but] a Sovereign American Citizen 'only' [and] no longer a 14th Amendment citizen."

{¶ 2}   The Ohio Rules of Civil Procedure do not contemplate such documents. The court will treat them as a motion to dismiss for lack of jurisdiction over the person under Civ.R. 12(B)(2), and will rule accordingly.

## FINDINGS OF FACT

{¶ 3}   It is hard to know how to approach the virtually impenetrable wall of legalistic gibberish which defendant has erected. However, in light of defendant's apparent misconceptions regarding citizenship, a brief review of Ohio history may be in order.

{¶ 4}   For thousands of years, the region now known as the state of Ohio was wild and unsettled. Indian tribes such as the Adena, Hopewell, Miami, Wyandot, Mingo, Delaware, Shawnee, and Seneca came and went as they pleased, and no nation exercised dominion here. Eventually European explorers and settlers arrived and, with the British victory in the French and Indian War of 1754–1763, British control of the Ohio territory was secured. Knepper, Ohio and Its People (Kent State Univ. Press 1989), at 9–32.

{¶ 5}   For over a century after their establishment, the original thirteen American colonies were ruled by Great Britain. In 1774, angered by "taxation without representation" and concerned that their rights were being systematically violated by King George III and his officials, the colonies sent delegates to the Continental Congress. The next year, the American Revolution broke out when colonists fought the King's soldiers at Lexington and Concord. On July 4, 1776, Congress adopted the Declaration of Independence, proclaiming that the colonies "are, and of right ought to be, free and independent states * * * absolved from all allegiance to the British Crown, and that all political connection between them and * * * Great Britain, is and ought to be totally dissolved." Several more years of warfare followed, until the great American victory at Yorktown in 1781 brought the War for Independence to a close. In 1783, the Treaty of Paris confirmed American independence from Britain.

{¶ 6}   Congress adopted a resolution on October 10, 1780, concerning the lands to the west of the original thirteen states: "Resolved, that the unappropriated lands that may be ceded or relinquished to the United States, by any particular states * * * shall be disposed of for the common benefit of the United States, and be settled and formed into distinct republican states, which shall

become members of the Federal Union, and shall have the same rights of sovereignty, freedom and independence, as the other states."

{¶ 7} Congress then passed the Land Ordinance of 1785, which provided for the surveying of the Western Territory, including present-day Ohio. In 1787, Congress enacted the Northwest Ordinance, establishing a territorial government here and providing that "[t]here shall be formed in the said territory, not less than three nor more than five states." The Ordinance prohibited slavery and provided for freedom of worship, the right of habeas corpus and trial by jury, and the right to make bail except for capital offenses. The Northwest Ordinance "was ever considered as the fundamental law of the territory." *Ludlow's Heirs v. Johnston* (1828), 3 Ohio 553, 555, 1828 WL 39. Also in 1787, a Constitutional Convention met in Philadelphia, proposing a new United States Constitution, which was ratified by the requisite nine states by 1789.

{¶ 8} Throughout the last decade of the eighteenth century, the pace of settlement in the Ohio territory increased and its population grew. Congress passed an Enabling Bill to establish a new state, which President Thomas Jefferson signed into law on April 30, 1802. Knepper at 93; *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 462, 715 N.E.2d 1062; 2 U.S. Stat. 173 (1802). The Enabling Act's preamble provided: "That the inhabitants of the eastern division of the territory northwest of the river Ohio be, and they are hereby, authorized to form for themselves a constitution and state government, and to assume such name as they shall deem proper, and the said state, when formed, shall be admitted into the Union upon the same footing with the original states in all respects whatever."

{¶ 9} A state constitutional convention was held in November 1802 in Chillicothe, and a state constitution was adopted. Congress accepted the constitution and approved statehood for the new state of Ohio. On February 19, 1803, President Jefferson signed the bill into law. It provided that Ohio "had become one of the United States of America," and that all the laws of the United States "shall have the same force and effect within the said State of Ohio, as elsewhere within the United States." The first state legislature met in Chillicothe, the new state capital, on March 1, 1803. Ohio was the seventeenth state to join the Union. Knepper at 32–98.

## CONCLUSIONS OF LAW

{¶ 10} Defendant is undoubtedly a citizen of the United States and of this state. The Fourteenth Amendment to the United States Constitution provides:

{¶ 11} "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." See, also, Section 1401(a), Title 8, U.S.Code.

{¶ 12} Every citizen of Ohio is a citizen of two distinct sovereignties having jurisdiction throughout the state. This jurisdiction is concurrent as to place and persons, but distinct as to subject matter. *Claflin v. Houseman* (1876), 93 U.S. 130, 23 L.Ed. 833.

{¶ 13} Ohio has never existed as an independent nation (unlike, for instance, Vermont and Texas before statehood), and defendant's references to an "Ohio Republic" have no basis in law or fact. Litigants in other courts have argued that Ohio is not a state, or that it was never properly admitted to the Union. These assertions are entirely groundless. *Lewingdon v. Celeste* (C.A.6, 1986), 810 F.2d 201; *Sisk v. C.I.R.* (C.A.6, 1986), 791 F.2d 58; *Holton v. Celeste* (C.A.6, 1986), 786 F.2d 1164; *Knoblauch v. C.I.R.* (C.A.5, 1984), 749 F.2d 200, certiorari denied (1985), 474 U.S. 830, 106 S.Ct. 95, 88 L.Ed.2d 78. Ohio is unquestionably a state, and part of the Union.

{¶ 14} Each of the cases which defendant cites in his "Certified Demand for Proof of Jurisdiction" pertains to the jurisdiction of federal courts, which is quite different from that of a state court. Defendant also misreads Clause 17, Section 8, Article I of the United States Constitution, which provides:

{¶ 15} "The Congress shall have Power to * * * exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings."

{¶ 16} Commonly referred to as the Enclave Clause, this provision simply refers to what was to become the District of Columbia, a national capital free of state control, and other areas such as military bases and national parks, which are under exclusive federal jurisdiction. It obviously does not mean that the Constitution is restricted in its operation only to such areas. As provided by the Supremacy Clause, Section 2, Article VI:

{¶ 17}  "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

{¶ 18}  The boundaries of the United States conform to the external boundaries of the several states, including all areas subject to the jurisdiction of the federal government wherever located, such as overseas territories. *Hooven & Allison Co. v. Evatt* (1945), 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252, rehearing denied (1945), 325 U.S. 892, 65 S.Ct. 1198, 89 L.Ed. 2004; *Harcourt v. Gaillard* (1827), 25 U.S. (12 Wheat.) 523, 6 L.Ed. 716.

{¶ 19}  In Ohio, the people are sovereign, but collectively, and not as individuals. *DeRolph v. State* (2000), 89 Ohio St.3d 1, 728 N.E.2d 993; *Miller v. Korns* (1923), 107 Ohio St. 287, 140 N.E. 773; see, also, *State ex rel. Robertson Realty Co. v. Guilbert* (1906), 75 Ohio St. 1, 78 N.E. 931. As the Ohio Constitution provides:

{¶ 20}  "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary." Ohio Constitution, Section 2, Article I.

{¶ 21}  The Supreme Court of Ohio held over a century ago:

{¶ 22}  "Here the people, possessing all governmental power, adopted constitutions, completely distributing it to appropriate departments. They created courts * * * [with] all the powers which are necessary to their efficient action, or embraced within their commonly received definition. The power in question was lodged permanently in the courts, to be exercised by those who, for the time being, may be charged with the performance of judicial duties." *Hale v. State* (1896), 55 Ohio St. 210, 214, 45 N.E. 199.

{¶ 23}  The judicial branch bears the judicial power of the state. Ohio Constitution, Section 2, Article IV. It is "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison* (1803), 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60. Interpretation of the state and Federal constitutions "is a role exclusive to the judicial branch." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 462, 715 N.E.2d 1062; *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 62, 676 N.E.2d 506. The "ultimate power to interpret, construe and enforce the constitution * * * belongs to the judiciary." *Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 12 O.O.3d 327, 390 N.E.2d 813. It is this power which this court must, and will, exercise in this case.

{¶ 24}  Ohio is a sovereign state, possessing sovereign powers effective within its territorial limits. *S. Gum Co. v. Laylin* (1902), 66 Ohio St. 578, 64

N.E. 564; *Ohio Dairy Co. v. Lake Shore & M.S.R. Co.* (1908), 7 Ohio N.P.(N.S.) 451, 456. Under any government of limited powers such as ours, sovereignty is the supreme power which governs the body politic. The rights of sovereignty are those which are essential to the existence of government. *Fid. & Cas. Co. v. Union Sav. Bank Co.* (1928), 119 Ohio St. 124, 162 N.E. 420. The authority of the state of Ohio is supreme, and extends over the entire area of the state. *Clements Bros. Constr. Co. v. Cleveland* (1901), 22 Ohio C.C. 152, 1901 WL 1145, affirmed (1902), 67 Ohio St. 197, 65 N.E. 885; *State ex rel. Ramey v. Davis* (1929), 119 Ohio St. 596, 165 N.E. 298; *Bucyrus v. State Dept. of Health* (1929), 120 Ohio St. 426, 166 N.E. 370; see, also, Ohio Constitution, Section 26, Article II ("All laws, of a general nature, shall have a uniform operation throughout the State"). The state cannot cede essential rights or attributes of sovereignty, including any of those powers which involve its domestic jurisdiction. *Hutchinson v. Thompson* (1839), 9 Ohio 52, 1839 WL 16; *Bd. of Edn. v. Sawyer* (1908), 7 Ohio N.P.(N.S.) 401, 1908 WL 665. Defendant therefore cannot, by unilaterally declaring himself "sovereign," reduce the power or authority of the state of Ohio, or remove himself from the jurisdiction of this court.

{¶ 25} The governments of the state of Ohio and of the United States are each sovereign, but the sovereignty of the state is essentially different from that of the federal government. The state is in some ways subordinate to the United States, as the Supremacy Clause indicates. *Claflin,* supra; see, also, *Tafflin v. Levitt* (1990), 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887; *Holmes Fin. Assoc., Inc. v. R.T.C.* (C.A.6, 1994), 33 F.3d 561, 564. The state of Ohio yielded a portion of its sovereignty to the United States by joining the Union, thus accepting the primacy of the Constitution of the United States. The Constitution and laws of the United States are just as much a part of the legal system of this state as are its own constitution and laws, and are just as binding. *State ex rel. Donahey v. Edmondson* (1913), 89 Ohio St. 93, 105 N.E. 269; *Bowles v. Rugg* (S.D.Ohio 1944), 57 F.Supp. 116, 119.

{¶ 26} The Constitution of Ohio guarantees that the courts of this state must be open, and each person must have a remedy by due course of law. Ohio Constitution, Section 16, Article I. The word "person" in this guaranty refers to any lawful resident. *Leiberg v. Vitangeli* (1942), 70 Ohio App. 479, 25 O.O. 211, 47 N.E.2d 235. Defendant does not deny that he is a lawful resident. Lawful residence gives rise to the protection of the law, and the ability to sue and be sued. *Leiberg,* supra; *Nyitray v. McAlonan* (1917), 29 Ohio C.D. 183, 1917 WL 1119; *Hau v. Helker* (1919), 21 Ohio N.P.(N.S.) 257, 1919 WL 1486. The United States Court of Appeals for the Sixth Circuit, interpreting Civ.R. 12(B) in the contexts of both federal and Ohio law, has held that dismissal of a case for lack of jurisdiction over the person is proper only if all specific facts which plaintiff

alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson* (C.A.6, 1996), 89 F.3d 1257. The court also notes that defendant's documents were filed on October 17, 2002. Judgment was entered against him on September 28, 1999. Even if the court were persuaded of the validity of defendant's assertion of sovereignty—which it definitely is not—it would avail him nothing against a lawful judgment entered against him more than three years earlier.

{¶ 27} To evade that judgment, defendant wishes to set himself outside the structure of ordered liberty provided by the laws of this state and this nation. President George Washington once warned, "If the laws are to be trampled upon with impunity, and a minority (a small one too) is to dictate to the majority, there is an end put, at one stroke, to republican government." Flexner, Washington: The Indispensable Man (Little, Brown and Co. 1969), at 316. It is hard to conceive of a minority smaller than one.

{¶ 28} Defendant is a citizen of this state unless and until he establishes residency in another state, or in another country. He is a citizen of the United States unless and until he undertakes those steps provided under federal law for revocation of citizenship, and, incidentally, subjects himself to deportation. Sections 1229 and 1481, Title 8, U.S.Code; see, also, *Afroyim v. Rusk* (1967), 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757. Clearly, defendant wishes to have his cake of citizenship and eat it too. He wishes to live in this state, drive on its roads, walk on its paths, be protected by its Constitution, laws, courts and officers, and enjoy all of its rights and blessings, while shirking its responsibilities—including the responsibility to pay his lawful debts. This is repugnant to both the letter and spirit of the law, and this the court will not permit him to do.

## HOLDING

{¶ 29} Treating his filings of October 17, 2002, as a motion to dismiss for lack of jurisdiction over the person under Civ.R. 12(B)(2), the court finds it to be both untimely and unpersuasive, and denies the motion. Defendant's filings are a nullity, of no legal force and effect whatsoever. The court's judgment of September 28, 1999, stands.

{¶ 30} IT IS SO ORDERED.

Judgment accordingly.