OPINION
 STATEMENT OF THE FACTS AND THE CASE {¶ 1} On May 29, 2005, Patrolman Brian Weiser of the Mount Vernon Police Department was on routine patrol in a marked cruiser, traveling North on Edgewood Road in Mount Vernon, Knox County, Ohio, following a truck being driven by appellant Michael Alan Young. Patrolman Weiser noticed that the expiration date sticker on Mr. Young's license plate was the wrong color. When Patrolman Weiser got close enough to Mr. Young's truck to read the date on the expiration sticker, he saw that the plates had expired. Believing there could be another explanation for the expired sticker, such as a newer sticker having fallen off, Patrolman Weiser radioed his dispatcher for a LEADS check on the plate. Patrolman Weiser was informed that the plates were in fact expired. Additionally, Patrolman Weiser was informed that the registered owner of the truck was Michael Alan Young, and that Mr. Young's Ohio driver's license had also expired. Patrolman Weiser stopped the driver of the truck and asked him if he was Michael Young, and the driver said that he was. Patrolman Weiser asked Mr. Young if he was aware his driver's license and plates had expired. Mr. Young indicated he did not believe he was required to have an Ohio driver's license or current license plates inasmuch as he was a Sovereign Citizen, and was exercising his constitutionally protected right of free travel. Patrolman Weiser cited Mr. Young with violating Sections 335.01 (Driver's License Or Commercial Driver's License Required) and 335.10 (Expired Plates) of the Codified Ordinances of the City of Mount Vernon, Ohio, and allowed Mr. Young to call a licensed driver to take Mr. Young and his truck home.
 {¶ 2} On August 8, 2005, Patrolman Weiser was again on routine patrol in a marked cruiser, this time heading East on Coshocton Avenue in the City of Mount Vernon, Knox County, Ohio. Patrolman Weiser passed an automobile going in the opposite direction which appeared to have homemade license plates on it. Patrolman Weiser turned around, caught up with the automobile, and stopped the driver. The driver of the automobile was appellant. Mr. Young again stated that he was a Sovereign Citizen exercising his constitutionally protected right of free travel, and that he therefore was not required to have a valid Ohio driver's license or current license plates. The appellant provided certified copies of a document entitled Act of StateDeclaration of Status to Patrolman Weiser, which purported to proclaim his status as a Sovereign Citizen, and acted as identification. Patrolman Weiser cited Mr. Young with violating Sections 335.01 (Driver's License or Commercial Driver's License Required) and 335.11 (Use of Unauthorized Plates) of the Codified Ordinances of the City of Mount Vernon, Ohio, and confiscated theAct of State Declaration of Status and homemade plates as evidence. Patrolman Weiser having called for backup, another officer conducted an inventory of Mr. Young's automobile, and caused it to be impounded. Patrolman Weiser opted not to have Mr. Young jailed. Both cases were consolidated for trial.
 {¶ 3} At the conclusion of the bench trial the court found appellant guilty as charged. Appellant has timely appealed raising the following assignments of error:
 {¶ 4} "(A) COURT FAILED TO ACKNOWLEDGE AND TAKE JUDICIAL NOTICE OF APPELLANT'S EXPLICIT RESERVATION OF ALL RIGHTS, PRIVILEGES, IMMUNITIES, REMEDIES AND DEFENSES AS SET FORTH IN ALL HIS PRESENTMENTS TO THE COURT. RATHER, THE COURT TOOK JURIDICAL NOTICE ONLY OF HIS RIGHTS TO CONTEST THE JURISDICTION OF THE COURT.
 {¶ 5} "(B) THE COURT FAILED TO ACKNOWLEDGE, TAKE JUDICIAL NOTICE OF, OR GIVE COGNIZANCE TO THE APPELLANT'S APPEARANCE INPROPRIA PERSONA.
 {¶ 6} "(C) THE COURT FAILED TO ACKNOWLEDGE OR ALLOW APPELLANT TO ADDRESS ANY ISSUES REGARDING THE CONFISCATION OF PERSONAL PROPERTY BY OFFICERS OF THE MOUNT VERNON POLICE DEPARTMENT.
 {¶ 7} "(D) THE COURT FAILED TO ACKNOWLEDGE OR TAKE JUDICIAL NOTICE OF THE APPELLANT'S RELIANCE ON THE STATE'S ACQUIESCENCE TO NUMEROUS INQUIRIES AND NOTICES REGARDING LICENSURE AND REGISTRATION.
 {¶ 8} "(E) THE COURT FAILED TO ACKNOWLEDGE OR TAKE JUDICIAL NOTICE OF THE APPELLANT'S CERTIFIED DOCUMENTS REGARDING THE APPELLANT'S DECLARATION OF STATUS, WHICH WERE TAKEN FOR EVIDENCE BY OFFICER WEISER AND ADDRESSED BY THE PROSECUTION.
 {¶ 9} "(F) THE COURT FAILED TO ACKNOWLEDGE OR TAKE JUDICIAL NOTICE OF THE APPELLANT'S POTENTIAL POLITICAL STATUS WHICH COULD AFFECT THE COURT'S JURISDICTION AND THE APPELLANT'S ALLEGED DUTY OR OBLIGATION TO THE STATUTES AND ORDINANCES RELATING TO THE ALLEGED CHARGES.
 {¶ 10} "(G) THE COURT FAILED TO ACKNOWLEDGE OR TAKE JUDICIAL NOTICE OF THE TACIT AGREEMENT BY ACQUIESCENCE FROM THE NUMEROUS STATE OFFICIALS AND EMPLOYEES THE APPELLANT HAD PERSONALLY CONTACTED REGARDING QUESTIONS RELATING TO THE MATTERS OF THE ALLEGED CHARGES RESPONSES UPON WHICH THE APPELLANT COULD HAVE AND DID RELY, FOR DECISIONS AFFECTING THE ACTIONS TAKEN BY THE APPELLANT.
 {¶ 11} "(H) THE COURT FAILED TO ACKNOWLEDGE OR TAKE JUDICIAL NOTICE OF THE APPELLANT'S FORMAL COMPLAINT TO THE SHERIFF IN REGARD TO MATTERS RELATING TO THE ALLEGED CHARGES.
 {¶ 12} "(I) THE COURT FAILED TO ACKNOWLEDGED AND TAKE JUDICIAL NOTICE OF INFORMATION READ INTO EVIDENCE BY THE SHERIFF, EXHIBIT I, WHICH PROCLAIMS THAT THE OHIO REVISED CODE IS NOT THE OFFICIAL LAWS FOR OHIO.
 {¶ 13} "(J) THE COURT FAILED TO ENFORCE THE APPELLANT'S SUBPOENA FOR THE APPEARANCE AND TESTIMONY FROM FRANKLIN CALTRIDER, REGISTRAR FOR THE OHIO BUREAU OF MOTOR VEHICLES.
 {¶ 14} "(K) THE COURT FAILED TO ACKNOWLEDGE, TAKE JUDICIAL NOTICE OF, OR GIVE COGNIZANCE TO THE APPELLANT'S APPEARANCE INPROPRIA PERSONA.
 {¶ 15} "(L) THE COURT MIXED TERMS HAVING SIGNIFICANT DIFFERENCES IN MEANING TO THE TERMS UPON WHICH THE APPELLANT RELIED IN HIS ACTIONS, E.G. `DRIVING' OR "OPERATING" AS OPPOSED TO "TRAVEL" OR "CONTROL", "MOTOR VEHICLE" AS OPPOSED TO "AUTOMOBILE", AND "DRIVER" AS OPPOSED TO "TRAVELER".
 {¶ 16} "(M) THE COURT FALSELY ASSERTS THE APPELLANT BELIEVES THAT THE "ONLY" WAY THE GOVERNMENT CONTROLS PEOPLE IS BY CONTRACT.
 {¶ 17} "(N) THE COURT FALSELY ASSERTS THE APPELLANT'S BELIEFS RELATING TO THE RESCINDING OF CONTRACTS.
 {¶ 18} "(O) THE COURT FALSELY ASSERTS THE APPELLANT'S BELIEFS IN OBLIGATIONS TO PARTICULAR LAWS.
 {¶ 19} "(P) THE COURT FALSELY ASSERTS THE APPELLANT TOOK SPECIFIC ACTIONS TO `BECOME' A SOVEREIGN CITIZEN, A STATUS SUPPORTED IN LAW THAT THE APPELLANT ALREADY POSSESSED.
 {¶ 20} "(Q) THE COURT FALSELY ASSERTS THE APPELLANT'S BELIEFS THAT GOVERNMENT HAS NO LEGITIMATE REASON TO INTERFERE WITH THE EXERCISE OF RIGHTS.
 {¶ 21} "(R) THE COURT FALSELY ASSERTS THAT THE CASES APPELLANT INTRODUCED AND RELIEF UPON ARE NOT ON POINT.
 {¶ 22} "(S) THE COURT FALSELY ASSERTS THAT APPELLANT IS A CITIZEN OF THE UNITED STATES.
 {¶ 23} "(T) THE COURT FALSELY ASSERTS THAT THE PEOPLE IN OHIO ARE SOVEREIGN, COLLECTIVELY, NOT INDIVIDUALLY.
 {¶ 24} "(U) THE COURT FALSELY ASSERTS THAT THE SOVEREIGNTY OF GOVERNMENT IS SUPERIOR TO THAT OF THE PEOPLE.
 {¶ 25} "(V) THE COURT FALSELY ASSERTS THAT APPELLANT IS A `PERSON' AS APPLIED WITHIN THE CODE SECTION RELATING TO THE ALLEGED CHARGES.
 {¶ 26} "(W) THE COURT FALSELY ASSERTS THAT APPELLANT IS A `RESIDENT'.
 {¶ 27} "(X) THE COURT FALSELY MAINTAINS IN PERSONAMJURISDICTION OVER THE APPELLANT WITHOUT ADEQUATE AND SUFFICIENT FACTS AND LAW IN SUPPORT, THEREOF.
 {¶ 28} "(Y) THE COURT FALSELY ASSERTS THAT LOSS OF U.S. CITIZENSHIP WOULD SUBJECT APPELLANT TO DEPORTATION.
 {¶ 29} "(Z) THE COURT FALSELY ASSERTS THE APPELLANT'S INTENT IN THE EXERCISE AND CLAIM OF HIS RIGHTS AS SECURED AND GUARANTEED BY THE CONSTITUTIONS OF THIS STATE AND FOR THE UNITED STATES OF AMERICA.
 {¶ 30} "(AA) THE COURT FALSELY ASSERTS THAT IN PERSONAMJURISDICTION IS PERFECTED SOLELY BY STATUTE OR CITY ORDINANCE.
 {¶ 31} "(AB) THE COURT FALSELY ASSERTS THAT JURISDICTION IS PERFECTED BY LEGAL ARREST AND THE FILING OF AN ALLEGED CLAIM.
 {¶ 32} "(AC) THE COURT FALSELY ASSERTS THE APPELLANT'S BELIEFS THAT RIGHTS ARE ABSOLUTE.
 {¶ 33} "(AD) THE COURT FALSELY ASSERTS THE STATE'S COMPELLING INTEREST IN RELATION TO LICENSURE.
 {¶ 34} "(AE) THE COURT FALSELY ASSERTS THAT NONE OF THE 151 CASES NOR 11 SECONDARY CITATIONS IMPLY A PROTECTED RIGHT TO TRAVEL INCLUDES THE RIGHT TO OPERATE A MOTOR VEHICLE.
 {¶ 35} "(AF) THE COURT FALSELY ASSERTS THAT APPELLANT FAILED TO ADDRESS THE RAMIFICATIONS OF THE 10TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE XVIII, § 3 OF THE CONSTITUTION OF THE STATE OF OHIO.
 {¶ 36} "(AG) THE COURT FALSELY CONCLUDED THAT BURDEN OF PROOF BY THE PROSECUTOR WAS MET SUFFICIENTLY TO IMPOSE A GUILTY SENTENCE ON THE APPELLANT, RESULTING IN THE ENTERED SENTENCE.
 {¶ 37} "(A) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE PROOF OF THE COURT'S POWERS AND AUTHORITIES ON WHICH TO ESTABLISH THE BASIS OF IN PERSONUM JURISDICTION.
 {¶ 38} "(B) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE PROOF OF THE COURT'S POWERS AND AUTHORITIES ON WHICH TO ESTABLISH THE BASIS OF SUBJECT-MATTER JURISDICTION.
 {¶ 39} "(C) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE THE EXACT NATURE AND CAUSE FOR THE ALLEGED CHARGES.
 {¶ 40} "(D) THE PROSECUTION, AND THE COURT, FAILED TO ESTABLISH A BASIS TO SECURE THE STATE'S COMPELLING INTEREST ADEQUATE TO JUSTIFY INFRINGEMENT ON THE APPELLANT'S RIGHTS OF LIFE, LIBERTY, AND PURSUIT OF HAPPINESS.
 {¶ 41} "(E) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE PROOF BY A PREPONDERANCE OF EVIDENCE OF THE APPELLANT'S CULPABILITY IN THE ALLEGED OFFENSES.
 {¶ 42} "(F) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE, BY AFFIDAVIT, STATEMENT, OR PROOF OF A VERIFIED CLAIM AGAINST THE APPELLANT.
 {¶ 43} "(G) THE PROSECUTION FAILED TO PROSECUTE THE APPELLANT'S TESTIMONY BY REBUTTAL, CHALLENGE OR CROSS-EXAMINATION.
 {¶ 44} "(H) THE COURT FAILED TO TAKE JUDICIAL NOTICE OF THE APPELLANT'S DUE DILIGENCE AND RELIANCE ON THE ACQUIESCENCE BY STATE AND FEDERAL OFFICIALS AND EMPLOYEES.
 {¶ 45} "(I) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE APPELLANT FULL DUE PROCESS OF THE LAW.
 {¶ 46} "(J) THE PROSECUTION, AND THE COURT, FAILED TO PROVIDE APPELLANT FULL AND EQUAL ACCESS AND PROTECTION OF THE LAW.
 {¶ 47} "(K) THE PROSECUTION, AND THE COURT, FAILED TO UPHOLD THEIR SOLEMN OATHS TO SUPPORT, PROTECT, DEFEND AND OTHERWISE UPHOLD THE CONSTITUTIONS IN DEFENSE OF THE APPELLANT'S SECURED RIGHTS AND IMMUNITIES.
 {¶ 48} "(L) THE PROSECUTION, AND THE COURT, FAILED TO PRODUCE ANY CONTRACTUALLY RELEVANT DOCUMENT THAT IMPOSES ANY DUTY OR OBLIGATION BY THE APPELLANT TO THE PLAINTIFF."
 I. — XXXIII. {¶ 49} The appellant provides thirty-three assignments of error with a one-hundred fourteen page brief.
 {¶ 50} At the outset, we note appellant's brief fails to comply with App.R. 19(A) and Loc.R. 9(B), which provides: "(B) Length of briefs. In addition to the requirements of App.R. 16, no appellant's * * * brief * * * excluding appendices, table of contents, table of cases, statement of assignments of error, and statement of the issues shall exceed thirty pages, unless, upona motion requesting an increase of a specific number of pages and the showing of good cause, this Court orders otherwise. No reply brief shall exceed fifteen pages". (Emphasis added).
 {¶ 51} Because appellant's brief appears to be in total non-compliance with the rules, we find this filing is tantamount to failing to file any brief. Although this Court has the authority under App.R. 18(C) to dismiss the appeal for failure to file a brief, we, nonetheless, elect not to dispose of appellant's appeal based upon the deficiencies of his brief.Fuller Assoc. v. All American Home Health Care, 5th Dist. No. 2003CA00377, 2004-Ohio-4342 at ¶ 8; State v. Patterson,
5th Dist. No. 02-COA-041, 2003-Ohio-4673 at ¶ 3-5.
 {¶ 52} It is hard to know how to approach the virtually impenetrable wall of legalistic gibberish which appellant has erected. State v. Bob Manashian Painting (Clev. Mun. Ct),121 Ohio Misc.2d 99, 2002-Ohio-7444, 782 N.E.2d 701.
 {¶ 53} However it appears that appellant's assignments of error center upon appellant's claim that the trial court lacked subject matter jurisdiction, jurisdiction over his person, and further that appellant as a Sovereign Citizen has an inalienable right to travel which cannot be interfered with by compelled licensure. We disagree.
 {¶ 54} The judicial power of the state is vested in "such other courts inferior to the supreme court as may from time to time be established by law." Section 1, Article IV, Ohio Constitution. The constitution gives the General Assembly the power to provide for municipal courts and their jurisdiction.Behrle v. Beam (1983), 6 Ohio St.3d 41, 42, 451 N.E.2d 237. Municipal courts, as they exist today in Ohio, were established in 1951 with the enactment of R.C. Chapter 1901. Id. State v.Spartz (Feb. 22, 2000), 12th Dist No. CA99-11-026.
 {¶ 55} Generally, all Ohio courts have jurisdiction over violations of Ohio law occurring in Ohio. See R.C. 2901.11(A). More to the point, municipal courts have jurisdiction over misdemeanor offenses.
 {¶ 56} Pursuant to R.C. 1901.20, "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory."
 {¶ 57} R.C. 1901.02 confers jurisdiction upon the Mount Vernon Municipal Court with jurisdiction of misdemeanors occurring within its territorial boundaries. The undisputed evidence demonstrated that the offense at issue occurred within the territorial jurisdiction of the Mount Vernon Municipal Court. The court also has subject matter jurisdiction over the violation of any ordinance of the City of Mount Vernon.
 {¶ 58} The Ohio Constitution Section 3, art. 18, provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court in Village of Struthers v. Sokol (1923), 108 Ohio St. 263,140 N.E.2d 519 noted "* * * by virtue of section 3, art. 18, of the Ohio Constitution, as amended in 1912, municipalities of the state have police power directly conferred by the people in all matters of local self-government * * *." Id. at 267, 140 N.E.2d 520-521. "Promptly after the establishment of home rule in Ohio, municipal control over municipal streets was clearly enunciated.Billings v. Cleveland Ry. Co. (1915), 92 Ohio St. 478,111 N.E. 155." State v. Parker (1994), 68 Ohio St.3d 283-284,1994-Ohio-93, 626 N.E.2d 106, 107. In Parker the Court reiterated "* * * a municipality's authority to regulate traffic comes from the Ohio Constitution * * *. Id. at 285,626 N.E.2d at 108.
 {¶ 59} It is clear that appellant, having been charged with violating an ordinance of a municipality located within the jurisdiction of the Mount Vernon Municipal Court, was subject to both the territorial and subject matter jurisdiction of the Mount Vernon Municipal Court. Consequently, the trial court properly exercised jurisdiction over the appellant and the case at bar.
 {¶ 60} Appellant cites no case or other authority which states or implies that a "fundamental right to travel" includes the right for appellant, without a valid operator's license, to operate an unregistered motor vehicle on a public roadway.
 {¶ 61} "In Ohio, a license to operate a motor vehicle is a privilege, and not an absolute property right." Doyle v. OhioBur. of Motor Vehicles (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph two of the syllabus. In fact, it is not a substantial private interest, but a state-regulated privilege. Maumee v.Gabriel (1988), 35 Ohio St.3d 60, 63, 518 N.E.2d 558, 561;State v. Uskert, 85 Ohio St.3d 593,599, 1999-Ohio-289,709 N.E.2d 1200, 1204. To be privileged to operate a motor vehicle in Ohio one must conform to the requirements of law which establish that privilege. Hill v. Harris (Hamilton C.P., 1948), 54 Ohio Law Abs. 391, 87 N.E.2d 97, 102.
 {¶ 62} "The owner of such a license holds it subject to reasonable regulation. His interest in the highway is common to that of every other user for whom the highways are constructed and there must be reasonable regulations to require or guide him in the use of them subject to the privilege of every other citizen to use them for the same purpose. If he cannot demean himself as a careful user, considerate of the right of others to do likewise, he becomes a public nuisance and should be excluded temporarily or permanently from their use. In this holding we do not overlook the right and liberty of appellant to use the highways as guaranteed by the Bill of Rights. At the same time none of these liberties are absolutes but all may be regulated in the public interest. It would produce an intolerable situation on the public highways to subscribe to a theory that they could not be summarily regulated in the interest of the public". Thornhillv. Kirkman (Fla., 1953), 62 So.2d 740.
 {¶ 63} The public interests to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others are significant State interests. Dixon v.Love (1977), 431 U.S. 105, 97 S.Ct. 1723; Miami v. Aronovitz
(1959), 114 So.2d 784. The licensing and registration regulations are a reasonable regulation of an individual right in the interest of the public good. One cannot overlook the importance of the public's claim to protection against incompetent, dangerous or unqualified motor vehicle operators. Id.
 {¶ 64} The state regulation of motor vehicle operation by means of licenses to insure some degree of public safety in no way interferes with any "right to travel" on public roads or otherwise. State v. Carroll (July 27, 1989), 8th Dist. No. 55611. "Driving a motor vehicle on a public roadway is only one form of travel. [the requirement for a valid driver's license] does not prevent Appellant from engaging in interstate or intrastate travel by walking, running, taking a bus, a train, a bicycle or an airplane. Appellant is free to go anywhere he wishes. He is merely restricted to do so by utilizing forms of travel in which he is not the driver of a motor vehicle". Statev. Stuber, Third Dist. No. 1-02-13, 2002-Ohio-3394 at ¶ 11.
 {¶ 65} Appellant has not cited to a single case in the federal courts, in this State, or any of the forty-nine other States which allows any individual the right to ignore the licensure and registration requirements upon the basis that such regulations are an unreasonable exercise of police power, or inhibit a citizen's right to intrastate or interstate travel. As aptly noted by the trial court in the case at bar: "[c]leary defendant wishes to have his cake of citizenship and eat it too. He wishes to live in this state, drive on its roads, walk on its paths, be protected by its Constitution, laws, courts and officers, and enjoy all of its rights and blessings, while shirking its responsibilities. This is repugnant to both the letter and spirit of the law. . . ." (Judgment Entry, Nov. 10, 2005 at 11, quoting State v. Bob Manashian Painting (Clev. Mun.Ct), 121 Ohio Misc.2d 99, 2002-Ohio-7444, 782 N.E.2d 701).
 {¶ 66} In the case at bar, appellant was charged and convicted of violating Section 333.01(a) (1) of the Codified Ordinances of the City of Mount Vernon, Ohio, which states, in pertinent part:
 {¶ 67} "No person, except those expressly exempted under Ohio R.C. 4507.03, 4507.04, and 4507.05, shall operate any motor vehicle upon a public road or highway or any public or private property used by the public for purposes of vehicular travel or parking in this Municipality unless the person has a valid driver's license issued under Ohio R.C. Chapter 4507 or a commercial driver's license issued under Ohio R.C. Chapter 4506."
 {¶ 68} Appellant was further charged and convicted of violation Section 335.10(d) of the Codified Ordinances of the City of Mount Vernon, Ohio, which states:
 {¶ 69} "No person shall park or operate any vehicle upon any public street or highway upon which is displayed an expired license plate or an expired validation."
 {¶ 70} Finally, appellant was charged and convicted of violation Section 335.11(a) (1) of the Codified Ordinances of the City of Mount Vernon, Ohio, which states:
 {¶ 71} "(a) No person shall operate or drive a motor vehicle upon the streets in this Municipality if it displays a license plate or a distinctive number or identification mark that meets any of the following criteria:
 {¶ 72} "(1) Is fictitious."
 {¶ 73} Appellant has never asserted that he had a valid driver's license or valid license plates for the vehicles he was operating when stopped by Patrolman Weiser on May 29, 2005, and August 8, 2005.
 {¶ 74} Additionally, a certified copy of the records of the Ohio Bureau of Motor Vehicles showing that appellant's driver's license expired on September 26, 2003 was admitted into evidence as "State's Exhibit 1," and appellant's homemade license plates were admitted into evidence as "State's Exhibit 2."
 {¶ 75} Based upon the foregoing, we find that appellant was properly and lawfully stopped, cited, and tried by the trial court.
 {¶ 76} Accordingly all of appellant's assignments of error are overruled.
 {¶ 77} For the foregoing reasons, the judgment of the Mount Vernon Municipal Court, Ohio, is affirmed.
Gwin, J., Wise, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mount Vernon Municipal Court, Ohio, is affirmed. Costs to appellant.