## RIVERSTONE COMPANY

### v.

## KRAFT HOMES L.L.C.

2010-Ohio-3516.]

Cleveland Municipal Court, Ohio.

No. 2009 CVI 12217.

Decided April 2, 2010.

**14**

[redacted]

Andrew R. Malone, for plaintiff.

Craig A. Swenson, for defendant.

---

TARVER, Judge.

{¶ 1} This case was called for a small claims trial on February 16, 2010, before Magistrate William F.B. Vodrey. Witnesses for plaintiff and defendant appeared and were duly sworn.

{¶ 2} Magistrate Vodrey's findings of fact and conclusions of law are hereby approved and confirmed. Judgment is rendered for plaintiff on the complaint and against defendant in the amount of $1,750, with interest at the rate of four percent per annum from date of judgment, plus costs. Plaintiff's claim for attorney fees is denied as unsubstantiated.

## Findings of Fact

{¶ 3} The evidence at trial showed that plaintiff is a land-surveying, civil-engineering, and land-planning firm. Defendant is a limited liability company that was formed in 2005 but went inactive about two years later. David Pietrantone, a licensed civil engineer and plaintiff's vice president, testified that he and his colleagues did work for the St. Rocco condominium project at defendant's request. Plaintiff's staff carried out a survey of the site, prepared a conceptual layout, and met with officials of the city of Cleveland to discuss the project. Pietrantone dealt primarily with A.J. Dinunzio, defendant's vice presi-

dent of construction. The parties had no written contract; Dinunzio refused to sign plaintiff's August 25, 2005 "Proposal: Engineering Services, St. Rocco Condominims, Cleveland, Ohio" until all work had been completed. Defendant paid for some of plaintiff's services but not all, leaving a balance due of $1,750 as of March 7, 2006.

{¶ 4} Pietrantone testified that plaintiff's fees were reasonable and appropriate, given the work performed, and that Dinunzio was fully aware of them ahead of time. Neither Dinunzio nor any other officer or agent of defendant ever indicated any dissatisfaction with plaintiff's work. The St. Rocco condo project was cancelled in summer 2006 due to economic unfeasibility. Plaintiff made several unsuccessful attempts to collect its fees from defendant after the cancellation of the project.

{¶ 5} Doreen Riebe, vice president of 20th Century Construction Company and also a member of defendant Kraft Homes L.L.C., testified that she, her daughters, and Dinunzio had established Kraft Homes in 2005. She had few dealings with Pietrantone, plaintiff's vice president, but saw faxed invoices and was generally aware of the project. She believed that plaintiff had acted prematurely in carrying out a survey, preparing a conceptual layout, and meeting with city officials, given the project's timetable before its eventual cancellation. She testified that Dinunzio was at one time 20th Century's construction manager, but denied that he represented defendant Kraft Homes L.L.C. in its dealings with plaintiff, despite plaintiff's submission of Dinunzio's business card, which identified him as defendant Kraft Homes L.L.C.'s vice president of construction. Dinunzio left defendant's employ by February 2007 and would have been fired had he not resigned, she testified.

{¶ 6} Doreen Riebe's husband, Tom Riebe, is president of 20th Century Construction Company. He is not and never had been a member or officer of defendant. He testified that he has interests in ten to 12 different companies, not all of which are now active. He generally corroborated his wife's testimony.

■ {¶ 7} Plaintiff now seeks $1,750 for services provided but not paid for. Although plaintiff sought attorney fees in its complaint and was given the opportunity to submit an affidavit by February 23, 2010, as to such fees, it has apparently failed to do so.

### Conclusions of Law

{¶ 8} Plaintiff argued at the January 29, 2010 hearing that the Riebes were not officers of defendant and were thus unauthorized to appear for it in court. After briefing by the parties and the submission of a faxed letter signed by Lori A. Smul, defendant's president, managing member, and statutory agent, authorizing

the Riebes to appear, plaintiff withdrew its objection. The case proceeded to trial after plaintiff's motions for default judgment and judgment on the pleadings were both denied.

{¶ 9} At trial, a court must determine the credibility of witnesses and the weight to be given the evidence. *In re Lieberman* (1955), 163 Ohio St. 35, 56 O.O. 23, 125 N.E.2d 328; *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 36 O.O.2d 288, 219 N.E.2d 221. The quality of evidence is more important than its quantity. If trial testimony or other evidence is in conflict, the court must decide which to believe and which to disbelieve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Plaintiff's witness was generally more credible than defendant's witnesses.

{¶ 10} Plaintiff argues that the parties had an oral contract; defendant denies it. It is a basic tenet of contract law that a binding agreement will not be deemed to have been formed unless the parties have had a meeting of the minds, through the presentation of an offer by one side and acceptance of that offer by the other. *Marshall v. Beach* (2001), 143 Ohio App.3d 432, 436–437, 758 N.E.2d 247. There are three "paradigm elements essential to contract formation * * * offer, acceptance, [and] consideration." *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 8, 15 OBR 22, 472 N.E.2d 765. Regrettably, the parties had no written contract. The Hollywood movie mogul Samuel Goldwyn (1882–1974) once remarked, "An oral contract isn't worth the paper it's printed on." *Certified Computer v. Rieth & Antonelli Co.*, 135 Ohio Misc.2d 1, 2005-Ohio-5936, 841 N.E.2d 866, ¶ 13.

{¶ 11} As shown by the facts of this case, oral contracts are notoriously prone to dispute and misunderstanding, which is why the law strongly favors written contracts. Nevertheless, the court is convinced that the parties had a meeting of the minds, and a valid and binding oral contract arose from plaintiff's August 25, 2005 proposal and its subsequent dealings with defendant's agent, Dinunzio.

{¶ 12} At trial, defendant denied that Dinunzio could even authorize the work that plaintiff performed for it. However, it is well established that if a person, known at law as a "principal," holds out another to the public as his or her agent or employee, the principal is bound by the acts of that individual, whether that individual in fact is such an agent. The public dealing with the agent is not required first to determine the nature and extent of the authority. *Combs v. Kobacker Stores, Inc.* (App.1953), 65 Ohio Law Abs. 326, 114 N.E.2d 447.

{¶ 13} An agent's acts within the apparent scope of authority conferred upon him are also binding on the principal. *Miller v. Wick Bldg. Co.* (1950), 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467; *Kimball v. Kimball Bros.* (1944), 143 Ohio St. 500, 28 O.O. 425, 56 N.E.2d 60. Corporations are liable for the acts of their agents in the course of their employment, in the same manner and to the same extent as private individuals. *Cleveland, Columbus & Cincinnati RR. Co. v. Keary* (1854), 3 Ohio St. 201. When an agent acts within the scope of his apparent authority, unless a third party has notice that he is acting otherwise, the principal is liable. *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 691 N.E.2d 303; *Sedaris v. Riley* (1928), 27 Ohio N.P.N.S. 215. Apparent authority may arise from a course of business or from a principal's spoken or written words or conduct that causes or permits a third person to act upon that apparent authority. *Fahey Banking Co. v. Adams* (1994), 98 Ohio App.3d 214, 648 N.E.2d 68.

{¶ 14} When a business or trade name is used to promote a product or service, the public is entitled to assume that transactions undertaken with one using such a name, with authorization to do so, are transactions of the person or company whose name is being used. *Agosto v. Leisure World Travel, Inc.* (1973), 36 Ohio App.2d 213, 65 O.O.2d 339, 304 N.E.2d 910. Authority to sell a particular article or service includes authority to warrant the title, quality, or condition of the item sold if such warranty is usual or customary in such a transaction and is reasonably necessary to transact the business entrusted to the agent. *Houston–Starr Co. v. Berea Brick & Tile Co.* (N.D.Ohio 1961), 197 F.Supp. 492.

{¶ 15} In this case, Dinunzio gave plaintiff a business card identifying him as defendant's vice president of construction. It bore defendant's distinctive logo and its address and phone number. Defendant had earlier paid for some of plaintiff's services based upon Dinunzio's dealings with plaintiff. Plaintiff clearly acted reasonably in treating Dinunzio as defendant's agent with full authority to authorize work for defendant's benefit.

{¶ 16} In a modern market economy, a person is entitled to payment for services rendered. The right to engage in work, and to reap the rewards thereof, is a natural right. *Sanning v. Cincinnati* (1909), 81 Ohio St. 142, 90 N.E. 125. Corporations such as plaintiff are "persons" within the meaning of the Fourteenth Amendment to the United States Constitution. *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania* (1888), 125 U.S. 181, 8 S.Ct. 737, 31 L.Ed. 650; see also Sections 1 and 19, Article I, of the Ohio Constitution; *Wheeling Bridge & Terminal Ry. Co. v. Gilmore* (1894), 8 Ohio C.C. 658, 1 Ohio Dec. 390. Corporations are guaranteed the equal protection of the law, including the ability to sue and be sued. *Louis K. Liggett Co. v. Lee* (1933), 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929; *GMS Mgt. Co. v. Axe* (1982), 5 Ohio Misc.2d 1, 5 OBR

53, 449 N.E.2d 43; R.C. 1701.13(A); see also *State v. Bob Manashian Painting*, 121 Ohio Misc.2d 99, 2002-Ohio-7444, 782 N.E.2d 701, ¶ 26.

{¶ 17} The court is persuaded that plaintiff did the work that it reasonably believed defendant wished, based upon Pietrantone's dealings with Dinunzio, defendant's agent. At trial, defendant's witnesses questioned the necessity of the work performed but could not, of their own personal knowledge, deny either that Dinunzio approved it or that it had actually been performed. They did not indicate that plaintiff's work was otherwise unsatisfactory in any way.

{¶ 18} Unjust enrichment occurs when one retains money or benefits that, in justice and equity, belong to another. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923; *Seward v. Mentrup* (1993), 87 Ohio App.3d 601, 603, 622 N.E.2d 756; see also *Video Discovery, Inc. v. Passov*, Cuyahoga App. No. 86445, 2006-Ohio-1070, 2006 WL 562148. Even though the St. Rocco condo project was eventually cancelled, defendant still benefitted from plaintiff's work, and plaintiff is now entitled to payment.

### Holding

{¶ 19} Plaintiff has proven its case by a preponderance of the evidence. Judgment accordingly.

So ordered.