[Cite as *Saint Paris v. Galluzzo*, 2021-Ohio-2861.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| VILLAGE OF SAINT PARIS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-7 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-764 |
| | : | |
| MICHAEL ANTHONY GALLUZZO | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of August, 2021.

. . . . . . . . . . .

ROGER A. STEFFAN, Atty. Reg. No. 0086330, Assistant Prosecuting Attorney, Champaign County Municipal Prosecutor's Office, 205 South Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

MICHAEL ANTHONY GALLUZZO, P.O. Box 710, Saint Paris, Ohio 43072
     Defendant-Appellant, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Michael Anthony Galluzzo appeals pro se from his convictions for resisting arrest and obstructing official business, misdemeanors of the second degree, following a bench trial in the Champaign County Municipal Court. We affirm the judgment of the municipal court.

{¶ 2} Galluzzo had been previously convicted of three offenses related to his operation of a motor vehicle without a driver's license and while his license was suspended. *See State v. Galluzzo*, 2d Dist. Champaign No. 2019-CA-19, 2020-Ohio-308, ¶ 1-2. With respect to those offenses, the trial court sentenced Galluzzo to 180-days of incarceration and fined him $100 for driving without an operator's license; it also imposed fines of $50 each for two convictions for driving under suspension. The court also imposed court costs. *Id.* at ¶ 6. Galluzzo's payment agreement with the court (which was attached to his brief in this appeal as Attachment 1) provided that $20 was due on the 15th day of each month, and it set forth a beginning balance of $2,319.20. The agreement reflected payments for January, February, and March 2020. It further provided that, if the fines and costs were not paid as ordered, then Galluzzo was to appear in court on the 16th day of the month at 8:00 a.m., or the next business day if this date fell on a weekend or holiday. Galluzzo was advised that failure to appear for any court ordered appearance could result in a warrant for his arrest and contempt of court proceedings. It further provided that the penalty for a first offense contempt of court was a maximum of 30 days in jail and/or a $25 fine, that failure to pay and to appear as ordered could result in the matter being turned over to a collection agency, and that a collection agency would add a 30% fee to any outstanding balance.

{¶ 3} On October 7, 2020, on the record, the municipal court issued the warrant for Galluzzo's arrest, noting that he had failed to make the required $20 payment on April 15 and had failed to appear in court the next day as ordered.

{¶ 4} On October 19, 2020, complaints were filed against Galluzzo for resisting arrest, in violation of St. Paris Ordinance 136.08(A), and obstructing official business, in violation of St. Paris Ordinance 136.06(A). At his arraignment the same day, the court indicated that Galluzzo was before the court for two matters: failure to pay his fines and costs in the previous case and the two new charges. Galluzzo refused the trial court's offer to appoint an attorney for him. The court set the matter for trial on November 4, 2020.

{¶ 5} On October 26, 2020, Galluzzo filed a document titled "Public Records Request (Freedom of Information Act)"; this document referenced the criminal case numbers, but it was not filed in the criminal cases. The Public Records Request requested the following items:

1. A certified copy of the alleged summons in Case # 18TRD01000, 16CRB00399, and 19TRD00928 for an alleged hearing on October 7, 2020.

2. A certified copy of the proof of service of the above summons.

3. A certified copy of the warrant that was issued in this matter on 10-07 2020.

4. A certified copy of the alleged charges from the above cases, itemized as to costs, fines, other alleged charges.

5. St. Paris police body cam video for October 19, 2020, from 1600 to 2000

hrs. for Officers Vlcek and Sagers and cruiser video and recording to the same time period.

6. Certified copies of all reports and documentation related to the serving of a warrant for MICHAEL A GALLUZZO against *Michael Anthony Galluzzo.*

Galluzzo also filed a pro se "Counterclaim/Cross-Claim."

**{¶ 6}** On October 30, 2020, the municipal court judge recused himself from the case. The trial was rescheduled for December 11, 2020. On November 30, 2020, Galluzzo filed a "Notice of Default by Affidavit Demand to Show Cause Demand for Dismissal for Lack of Jurisdiction." On December 11, 2020, Galluzzo filed a "Demand for Dismissal."

**{¶ 7}** At the start of the proceedings on December 11, 2020, the prosecutor asked the court whether the Village needed to address "the * * * demurrer and the challenge to jurisdiction" that Galluzzo had filed before trial. The court responded, "If you want to take testimony out of, of those two matters first, that's fine. Your presentation, your burden of proof." The prosecutor asked the court to take judicial notice that the court had issued a valid warrant for Galluzzo's arrest for failing to appear to pay fines and costs.

**{¶ 8}** At trial, Amy Evans, the Clerk of Court for the municipal court, testified that her duties included keeping track of fines and court costs. She testified that Galluzzo had failed to make payments or to appear for a hearing for several months. Evans testified about the standard payment agreement that's given to every defendant at the conclusion of the proceedings, stating:

It indicates the monthly amount that they're supposed to pay, the

total balance, and it has a disclaimer at the bottom to say if they are unable to make those fines and costs, they are ordered to appear for a hearing in that matter the next business day the court is open, after their scheduled payment date, to go before the Court for that hearing to address the issue.

Evans testified that the court had issued the warrant for Galluzzo in the course of its standard operating procedure, and that the warrant was in effect on October 17, 2020 (the day of Galluzzo's arrest).

{¶ 9} Prior to conducting cross-examination of Evans, Galluzzo stated that he did not want the court to consider any questions he asked to be his "consent or assent" to the court's jurisdiction. The court agreed to consider the questions "for the merit of the questions and what they pertain to." Galluzzo then questioned Evans. In response to a question by Galluzzo regarding the issuance of any summons for the October 7, 2020 proceeding, Evans stated that "there's an automatic hearing set the next business day" after a missed payment, for which notice is provided with the payment agreement at the time of sentencing, and that additional notification other than what was provided at sentencing on the payment agreement was not sent. In response to a question by the court, Evans also stated that Galluzzo "made two payments recently," one in late November and one on the day of trial, "but prior to that there had been no payments * * * going back to spring." Evans also clarified that, pursuant to the court's entry and payment agreement, the court could enter a notice of contempt on each date after a nonpayment.

{¶ 10} On redirect examination, Evans testified that, when a defendant makes a payment, he or she receives a receipt that shows the balance remaining and when the

next payment is due. Evans stated that the warrant for Galluzzo's arrest was issued for failure to appear for a hearing, not for failure to make payments.

{¶ 11} Garrett Vlcek, a police officer in the Village of St. Paris, testified that on October 17, 2020, he learned that there was a warrant for Galluzzo in the course of his duties at work. Vlcek then observed Galluzzo in his yard on Main Street in New Paris and interacted with him there. Based on this testimony, and addressing Galluzzo's argument about the court's jurisdiction, the prosecutor pointed out that R.C. 1901.02(A)(13) "establishes that the City of Urbana will have a municipal court that is to be called the Champaign County Municipal Court, * * * and specifically the B section states that it will have jurisdiction over all misdemeanors in the state that are within Champaign County." The prosecutor argued that Officer Vlcek's testimony that he was within his jurisdiction as a law enforcement officer in the Village of St. Paris when he arrested Galluzzo and that all of their interactions were within Champaign County established the court's jurisdiction to hear the matters before it.

{¶ 12} Galluzzo then advised the court that he did not consent to personal jurisdiction and that, with respect to subject matter jurisdiction, there was still a "question of whether or not the warrant was valid since Rule 4 requires that * * * paragraph 8 says no warrant or alias warrant shall be issued unless a person fails to appear in response to the summons." Galluzzo asserted that no summons had been issued. Galluzzo also asserted that there was "no authority for them to issue a warrant, and the warrant was issued for Michael A. Galluzzo, the Ens Legis entity and not the flesh and blood man."

{¶ 13} The court found that it had jurisdiction over the matter pursuant to the Ohio Revised Code. It also found that Galluzzo was "the person who's involved in this

particular case and has been charged," that he had "received due notification by virtue of the entry already testified to by Ms. Evans," that if he failed to make the monthly payments on his payment agreement with the court, that his hearing date was set for the day after, and that his failure to make payments for several months in a row and failure to appear as ordered by this Court violated the court's order.

{¶ 14} The prosecutor then advised the court that "the only other challenge was for a demurrer," but noted that the Ohio Revised Code Section that Galluzzo relied upon referred only to felonies, Galluzzo was not charged with a felony, and "[t]here is no such thing as the demurrer for a misdemeanor." The court overruled Galluzzo's demurrer and indicated its intention to proceed with testimony about the allegations in this case related to obstruction of justice and resisting arrest.

{¶ 15} Officer Eloy Sagers of the St. Paris Police Department testified that, on October 17, 2020, he learned of an arrest warrant for Galluzzo and proceeded to Galluzzo's residence. He stated that he "entered from the back, down the street, and Officer Vlcek pulled the patrol car up to the front of the house." Sagers stated that Vlcek initiated contact with Galluzzo, who "started walking into the house." Sagers stated that he asked to speak to Galluzzo, who refused. Galluzzo "then proceeded up the steps into his residence," with Sagers "right behind him"; Galluzzo tried to shut the door, and Sagers pushed it back open. Galluzzo was saying "do not come in my house." Sagers testified that the officers advised Galluzzo numerous times that there was a warrant for his arrest and that he needed to come outside.

{¶ 16} According to Sagers, Vlcek "then went hands-on" to remove Galluzzo from the premises. When Galluzzo turned around, Sagers grabbed Galluzzo's left arm "to get

control to put handcuffs on," but Galluzzo "started resisting, pulling his hands back to the front of him." Sagers stated that he pushed Galluzzo up against the house, placed him in handcuffs, and took him to the patrol car.

{¶ 17} On cross-examination, Galluzzo asked Sagers if he and Vlcek had body cameras on at the time of his arrest, and Sagers indicated that he did. Galluzzo stated that he had requested the videos but had not received them. The prosecutor indicated that the Village was not in possession of any body camera videos. After a lengthy discussion, the court marked Galluzzo's October 26, 2020 "Public Records Request" as Defendant's Exhibit 1. The following exchange occurred regarding Exhibit 1:

> THE COURT: Bottom line - - the bottom line is what he's fishing for here is a certified copy of proof of service of summons. That was an inherent part of the payment agreement as I understand.

> [THE PROSECUTOR]: My office would not have proof of the service of the, the warrants. My office would have things related specifically to the new charges for the Resisting and the Obstruction, but in terms of warrants for failure to pay fines and costs, that is complete with this Court. My office does not have any records for that.

{¶ 18} Next, Officer Vlcek testified regarding Galluzzo's arrest. He stated that Galluzzo was advised repeatedly about the warrant; Galluzzo denied that there was a warrant and asserted that he had paid his fines. Vlcek stated that he asked Galluzzo multiple times to come out of the house and "just make this easier on all of us." Vlcek stated that he left the porch and called the Chief of Police, who told him to get Galluzzo in custody as soon as possible. Vlcek stated that Galluzzo told him multiple times that

he wanted to get his receipts from the court; Vlcek told Galluzzo that he could get his receipts if Vlcek could go in the house with him, "because I don't know what you're going for." Vlcek stated that "in the report you can read that he [Galluzzo] actually did pull a machete like knife when Officer Sagers interacted with him." Vlcek stated that he grabbed Galluzzo's shoulder, "pushed his shoulder up * * * towards his head," and then Galluzzo finally gave Vlcek his hand, "and then he gave Officer Sagers his hand to put behind his back too," and then Galluzzo was handcuffed.

{¶ 19} After discussion resumed regarding the body camera video, the following exchange occurred:

THE COURT: * * * Mr. Galluzzo, I'm going to ask you for a proffer to the Court of what you expect or think that this body cam may show, what evidence.

MR. GALLUZZO: I would have to see the body cam because I know several times I asked the officers to produce the warrant, and they said they couldn't produce it; it was only on the computer.

When they finally got me in the car and, um, pulled up the information, there was no warrant on there. So they said that um, I had missed a hearing on October 7th and I had no notice of any hearing. So my comments to them, um, I think established lack of probable cause in this matter.

I'm not adverse to the Prosecutor's staying the matter until the body cam issue can be resolved. * * *

{¶ 20} After a recess, the court indicated that it would pause the proceedings "to

allow the Prosecution to check as to availability of a supposed body cam, or cams plural, on the officers, there being some confusion as to whether or not they may have been destroyed when the police chief was relieved of her position." The prosecutor then advised the court that he had learned that the videos could be retrieved. The court stayed the proceedings until January 8, 2021, to enable Galluzzo to view the body camera videos. Galluzzo also asked the court for a copy of "the audio and video" of his "original arraignment," claiming that they would show he had never entered a plea in the case; the court pointed out that the case was proceeding as if Galluzzo had not entered a plea, but that a not guilty plea had been entered on his behalf when he remained mute at the arraignment.

{¶ 21} On December 14, 2020, Galluzzo filed correspondence addressed to the court clerk requesting multiple documents and recordings. On January 7, 2021, Galluzzo filed a "Challenge to the Jurisdiction Demand for Dismissal." On January 8, 2021, Galluzzo indicated to the court that he had received videos of the officers' body cameras but had not viewed them. The prosecutor stated that the videos had been mailed to Galluzzo on December 14, 2020, and he asked the court to "reopen" the State's case to allow the officer "to attest to his body cam." Galluzzo then advised the court as follows:

> If I may, I would like to make a statement for and on the record that number one, I am not here voluntarily. I'm here under threat, duress, and coercion.
>
> Number two, I have not pled in this matter. I have never been asked to plead in this matter.

Number three, the jurisdictional issue of when the arrest was made and the reason the arrest was made for failure to appear at a hearing that I never received notice of makes the proceedings improper and violation of due process.

And number four, the question of who I am as a man versus the corporate entity that they claim I am has not been clarified.

**{¶ 22}** The court advised Galluzzo that it had already rejected his jurisdictional arguments and his argument with respect to not entering a plea. It also found that he had not been denied any constitutional rights, that he was not under arrest at the time of trial, and that he had been notified on the trial date and appeared on his own.

**{¶ 23}** Officer Sagers's body camera video of Galluzzo's arrest was played for the court and authenticated by Officer Sagers.

**{¶ 24}** After the State rested, Galluzzo renewed his motion to dismiss, and the court denied the motion.

**{¶ 25}** Galluzzo then recalled Amy Evans to testify. She stated that there "was a time period where the Court was not enforcing [payment agreements], allowing people to have extra months as a courtesy due to the virus." She stated, "[b]ut that order renews every month. Any month that you do not pay, a warrant can be issued for your arrest." The following exchange occurred:

[EVANS]: * * * It looks like this is the most current agreement that you've had where it was indicated that you would pay by the 15th of each month or appear the 16th day of the month or the next business da[y] if it falls on a weekend or holiday for a hearing on your ability to pay.

\* \* \*

Q [GALLUZZO]. \* \* \* What was the last payment that was made on that? Do you have that?

A. The last payment, according to this agreement, was made on March the 5th. I know there was a payment that was made after your warrant was issued in December

Q. Would you take a look at this receipt from the court?

A. Okay.

Q. \* \* \* Uh, according to the previous receipt and that, there was $140 due - - let's say $160, including October, that was due on the 15th of October, correct?

A. There was a $50 payment on the 15th of October, that's correct.

Q. There was how much?

A. I'm sorry. It looks like it went toward your fine. There was a total of $200 paid on that October date.

Q. So that was more than what was due at that time, correct?

A. Your payment is to be made every month or you're to appear every month. You can't not pay for six months and then come in and make a lump sum after a warrant has been issued. That's not how the Judge's policy works. The warrant was already in effect at some point when a payment was made. I don't have the warrant in front of me to see when this coincides with the payment.

Q. Well, if I was not issued a summons to appear in court on the

15th or 16th, and it was prematurely made on the 7th, working off of the old documents, the old order, my question would be why was the - - as from the testimony of the officer, the warrant was dropped on the 17th, and it also indicates that the payment was made on the - - the $200 payment was on the warrant as well.

So wouldn't * * * if the warrant was * * * dropped on the 17th, would it not have been after the payments were made and brought up to date and paid in advance?

A. * * * I don't have the warrant in front of me to see the date. You handed me a receipt and asked me about the receipt.

Q. Do you have a copy of the warrant there?

A. I do. Sir, it looks like your warrant was issued on October the 7th for your failure to pay. The warrant was issued October 7th for your failure to pay April, May, June, July, August, and September.

Your $200 payment was then made after that warrant was issued on October the 15th. There was also a subsequent payment of $20 made on December the 11th.

The bond amount for the warrant is $2,409.20. The $220 you paid total did not pay that in full; therefore, the warrant remained in effect.

* * *

Q. So if the Court was showing leniency on payments, primarily because of the COVID epidemic or pandemic, should this not have been delayed until the appearance should've been on the 17th of October?

A.   This is not my order.   I don't issue warrants.   The Judge does. It's his policy.   You didn't appear for one, two, three, four, five, six - - six months, six potential hearings.

Q.   Well, during that six months weren't the people ordered to stay home, not go out because of the pandemic and such?

A.   I don't know the time frame on that, sir.   We conducted court continuously throughout that time.   * * *

* * *

THE COURT:   The documents you're reading from, the heading of that document is what, please?

THE WITNESS:   Contempt warrant, sir.

THE COURT:   And is that a document that is issued in the ordinary course of business of this court?

THE WITNESS:   That is correct, sir.

* * *

THE COURT:   * * * And does that take the form of an order?

THE WITNESS:   It's on a payment agreement order, yes, sir.

THE COURT: * * * So it is then a court order and that's how the Judge enforces his policies?

THE WITNESS:   Correct, sir.

THE COURT:   * * * The contempt citation that is dated October 7th is executed by what person?

THE WITNESS:   The warrant is signed by Judge G.S. Weithman,

sir.

THE COURT:  * * * And if I understand correctly, it is for failure to appear and not because of the nonpayment?

THE WITNESS:   That's correct.

{¶ 26} When asked if he wished to testify as to the facts of the case, Galluzzo stated as follows:

THE WITNESS:   Well, the facts in this case are that I was never apprised or noticed of a hearing on October 7th.   Uh, without that notice, * * * pursuant to the Constitution and Supreme Court law, that invalidates the warrant and makes it a false - - invalid, false warrant, which makes the arrest, uh, under the warrant, uh, unlawful, and further makes the charges invalid or void.

Uh, therefore I see it the only, the only op - - the option this Court has under the Constitution and Supreme Court rulings is to dismiss this matter.

{¶ 27} After the State's closing argument, the prosecutor stated that, at all times the officers who arrested Galluzzo believed that the arrest warrant was valid; the body video showed that they checked with their dispatch multiple times and "had every reason to believe that warrant was valid."

{¶ 28} The court found Galluzzo guilty of resisting arrest and obstructing official business.   The court also found that the officers made the arrest under a valid warrant issued by the court on October 7, 2020, for failure to appear in the Champaign County Municipal Court to answer a charge of contempt of court for fines and costs "and/or to hold for the next court date." The court noted that the record attached to the court's order

showed payments made by Galluzzo in the amount of $20 for the month of January, February, and March 2020, but none thereafter until $200 was paid on his behalf on the October 15, 2020.

{¶ 29} When asked to address sentencing, Galluzzo responded, "I have not seen anything on these charges related to Village Ordinances."   The court responded:

> * * *   The fact that you have not seen it or taken time - - you were probably too busy arguing that you were a corporate entity to take a look at the paperwork and/or refused to get it.   I can't answer that.
>
> The, the sole purpose for us to be here today is to determine whether or not you are guilty as charged.
>
> The officers have already testified that they, that they believed they had a valid warrant, that all times they were operating under a warrant. The Clerk has established that a warrant was issued on the 7th of October ordering your arrest.   The officers went forward with their obligations as a result of that warrant and their belief in its validity.
>
> They attempted, as shown by your own video, as you requested it, to elicit a peaceful and cooperative arrest.   They ended up as a result of this having to cuff you and physically take you from your premises and put you in a squad car.
>
> If you chose not to cooperate and didn't read what was given to you or didn't pay attention, I'm sorry, but that not - - that's not the problem.

{¶ 30} For resisting arrest, the court imposed 90 days in jail, a $750 fine, and costs; the jail sentence was ordered to be served consecutively to all cases, with 88 days

suspended. The court also suspended $700 of the fine. For obstructing official business, the court imposed 90 days in jail, a $750 fine, and costs, to be served consecutively to all cases; the court suspended 90 days and $700 of the fine. With respect to the suspended days in jail (178 days), the court placed Galluzzo on a two-year, reporting probation; the terms of probation included committing no "jailable offenses" and obeying all terms and conditions of the probation staff.

{¶ 31} The court's judgment entry further provided that Galluzzo's fines and costs would be added to the existing payment agreement; he would pay $20 per month on the 15th of each month or appear in court on the next business day that the Court was open for a hearing on his ability to pay. Again, the court notified Galluzzo that his failure to appear for any such hearing may result in a warrant for his arrest and result in contempt proceedings.

{¶ 32} Galluzzo appeals from his conviction, raising two assignments of error. In the first assignment, he argues that the municipal court committed plain error when it failed to give him proper notice of the October 7, 2020 hearing. In his second assignment of error, Galluzzo asserts that the municipal court committed plain error and "demonstrated bias and prejudice in favor of the Prosecution" when it denied his demurrer and jurisdictional challenge. Galluzzo asserts that the "court erred when it failed to identify the proper lawful parties," asserting that he "identified himself as the beneficiary Michael Anthony Galluzzo, upper and lower case name, the flesh and blood man and stated that he was not named defendant MICHAEL A GALLUZZO, all caps, the Ens Legis entity, the corporate entity."

{¶ 33} The Village asserts that Galluzzo's "Attachment 1," the payment agreement

on the driver's license and suspension offences, gave the required notice that Galluzzo was required to appear in court on April 16th, 2020 if he could not make the payment due on April 15. Clerk of Court Amy Evans testified that this was the Court's "standard operating procedure"; moreover, the warrant was not issued immediately after Galluzzo missed the April 16th meeting, but he "was allowed leeway to appear due to the Covid-19 pandemic." According to the Village, Galluzzo was not required to have notice that the Court was issuing the warrant on October 7; by that time, the hearing at which Galluzzo's presence was required had already passed. Therefore, the warrant "should be considered valid," and the first assignment of error should be overruled. The Village also asserts that the trial court properly denied Galluzzo's "challenge on demurrer," and the second assignment of error should be overruled.

{¶ 34} Initially, the Village incorrectly asserted that Galluzzo had failed to file the transcript of the proceedings in the Champaign County Municipal Court. However, it later acknowledged that the transcript had been filed.

{¶ 35} We agree with the Village that Galluzzo was not entitled to notice of the proceedings on October 7, 2020, at which the court issued the contempt warrant for his failure to appear. His duty to appear was predicated on his failure to pay, as set forth in the court's payment agreement. As the Village asserts, Galluzzo had notice to appear to address his failure to pay as set forth in the payment agreement. The "disclaimer" in the agreement provided: "failure to appear for any court ordered appearance may result in a warrant for the Defendant's arrest and contempt of court proceedings." The municipal court did not hold a hearing on October 7, 2020; it simply issued a warrant for officers to detain Galluzzo for contempt of court proceedings. Galluzzo was

subsequently arrested when he resisted arrest and obstructed official business. Galluzzo's first assignment of error is overruled.

{¶ 36} Regarding Galluzzo's second assignment of error, the record reflects that the court considered Galluzzo's jurisdictional arguments and properly found that, as a municipal court, it had jurisdiction over Galluzzo for his misdemeanor offenses committed in Champaign County.   As this Court has noted:

> Ohio municipal courts "are created by statute, R.C.1901.01, and their subject-matter jurisdiction is also set by statute." *State v. Mbodji,* 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 11. An Ohio municipal court "has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *Id.,* citing R.C.1901. 20(A)(1).   The filing of a complaint invokes the jurisdiction of a municipal court.   *Id.* at ¶ 12.   *See also State v. Gunnell,* 10th Dist. Franklin No. 13AP-90, 2013-Ohio-3928, ¶ 8.   * * *

> With respect to personal jurisdiction, many courts have addressed and rejected arguments * * * that a citizen must consent to the jurisdiction of the court.   This court and others have found that consent is unnecessary and irrelevant to a court's jurisdiction. We addressed this jurisdictional argument in *St. Paris v. Galluzzo,* 2d Dist. Champaign No.2014-CA-4, 2014-Ohio-3260 [¶ 11, quoting *City of Mount Vernon v. Young,* 5th Dist. Knox No.2005CA45, 2006-Ohio-3319.   *See also Dayton v. Galluzzo,* 2d Dist. Montgomery No. 25913, 2014-Ohio-4854, ¶ 8] as follows:

> > The judicial power of the state is vested in "such other courts inferior to the supreme court as may from time to time be established

by law." Section 1, Article IV, Ohio Constitution. The constitution gives the General Assembly the power to provide for municipal courts and their jurisdiction. *Behrle v. Beam,* 6 Ohio St.3d 41, 42, 451 N.E.2d 237 (1983). Municipal courts, as they exist today in Ohio, were established in 1951 with the enactment of R.C. Chapter 1901. *Id.*[;] *State v. Spartz,* 12th Dist. Madison No. CA99-11-026, 2000 WL 204280, * 1 (Feb. 22, 2000).

Generally, all Ohio courts have jurisdiction over violations of Ohio law occurring in Ohio. See R.C. 2901.11(A). More to the point, municipal courts have jurisdiction over misdemeanor offenses.

Pursuant to R.C.1901.20, "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory."

* * *

*State v. Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055, ¶ 4-5.

{¶ 37} Regarding his demurrer, Galluzzo asserts that pursuant to R.C. 2941.62, "demurrers shall be heard immediately." But as the Village points out, demurrers were abolished by Crim.R. 12(A), which provides, "[p]leadings in criminal proceedings shall be the complaint, and the indictment or information, and the pleas of not guilty, not guilty by reason of insanity, guilty, and no contest. All other pleas, demurrers, and motions to quash, are abolished. * * *." *See State v. Shutway*, 2d Dist. Champaign No. 2013-CA-55, 2015-Ohio-2432, ¶ 37. Further, demurrers " 'were previously abolished in

misdemeanor cases by R.C. 2937.04, and exceptions to the complaint that could have been made thereunder were consolidated into a motion to dismiss the complaint.' [*Village of St. Paris v. Galluzzo*, 2d Dist. Champaign No. 2014-CA-4, 2014-Ohio-3260] at ¶ 10, citing 2 Katz & Giannelli, *Criminal Law,* Section 47.2, fn. 2 (2009).' " *Shutway* at ¶ 38.

**{¶ 38}** Galluzzo's second assignment of error is overruled.

**{¶ 39}** The judgment of the municipal court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Roger A. Steffan
Michael Anthony Galluzzo
Hon. R. David Picken, Visiting Judge